IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RACKSPACE US, INC. | § | |
| | § | CIVIL ACTION NO. _____ |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| PARALLEL IRON, LLC and IP | § | JURY DEMAND |
| NAVIGATION GROUP, LLC | § | |
| | § | |
| Defendants. | § | |

## RACKSPACE'S ORIGINAL COMPLAINT AND JURY DEMAND

### I.   INTRODUCTION

1.     This is an action for a declaratory judgment of noninfringement against Parallel Iron and for breach of contract against Parallel Iron and IP Navigation Group ("IPNav").

2.     Rackspace respectfully asks this Court to enter a judgment declaring that Rackspace does not infringe three related patents—U.S. Patent Nos. 7,197,662 ("the '662 patent), 7,543,177 ("the '177 patent"), and 7,958,388 ("the '388 patent") (collectively, the "patents-in-suit")—owned by Parallel Iron.

3.     Rackspace also alleges that Parallel Iron and IPNav breached their agreement not to sue Rackspace for patent infringement without first providing written notice that settlement discussions had ended.

4.     On March 18, 2013, Parallel Iron sued Rackspace and 11 other defendants in Delaware for allegedly infringing the patents-in-suit (the "Delaware Action"). The Delaware Action is only the latest in a series of 23 lawsuits Parallel

Iron has filed in Delaware on the patents-in-suit since June of last year, after Parallel Iron was forced to dismiss an earlier set of lawsuits on another patent that Parallel Iron could not enforce.

5.      But Parallel Iron jumped the gun. In December 2010, Parallel Iron (anonymously, through its "agent," IPNav) first accused Rackspace of patent infringement, asserting that its patents on storage-area-network ("SAN") and network-attached-storage ("NAS") equipment also covered the open-source Hadoop distributed-file system ("HDFS"). But when Rackspace asked IPNav to substantiate its claims, IPNav insisted that Rackspace enter into a "Forbearance Agreement" that prohibited the parties from suing each other without first giving 30 days' notice that discussions were terminated.

6.      Parallel Iron and IPNav were clearly worried that Rackspace would file a declaratory-judgment action as soon as they made their patents and claims known to Rackspace. Indeed, IPNav expressly stated this concern to Rackspace. But when Parallel Iron sued Rackspace on March 18, it willfully ignored the very agreement that it had insisted on, suing without giving *any* notice whatsoever. This material breach of the Forbearance Agreement relieves Rackspace of any further duty to comply with the Forbearance Agreement. Therefore, Rackspace's declaratory-judgment claims—unlike the Delaware Action—are properly filed.

## II.    PARTIES

7.      Rackspace is a corporation organized under the laws of Delaware. Its principal office is located at 5000 Walzem Road, San Antonio, TX 78218-2117.

8.     Parallel Iron is a Delaware limited-liability company. It may be served through its registered agent, Agents and Corporations, Inc., 1201 Orange Street, Suite 600, One Commerce Center, Wilmington, DE 19801.

9.     IPNav is a Texas limited-liability company. Its principal office is located at 2515 McKinney Avenue, Suite 1000, Dallas, TX 75201. It may be served through its registered agent, Erich Spangenberg, at its principal office.

### III.   JURISDICTION AND VENUE

10.    This Court has subject-matter jurisdiction for Counts I, II, and III under 28 U.S.C. § 2201(a) and 28 U.S.C. § 1331, as this action is predicated upon a federal question and there is an actual case or controversy between the parties. This Court has supplemental subject-matter jurisdiction for Count IV under 28 U.S.C. § 1367(a), as this action is so related to the claims in Counts I, II, and III that they form part of the same case or controversy under Article III of the United States Constitution.

11.    This Court has personal jurisdiction over Parallel Iron and IPNav. Parallel Iron, alone and through its agent IPNav, has had sufficient minimum contacts with the State of Texas and has purposefully availed itself of the laws of the State of Texas. The claims at issue arise from those minimum contacts with the State of Texas. IPNav is a Texas limited-liability company with its principal office in Dallas, TX. It has continuous and systematic contacts with the State of Texas. IPNav entered into the contract at issue on behalf of its unidentified principal Parallel Iron, LLC, a Texas limited-liability company ("Parallel Iron-Texas").

Parallel Iron-Texas—Parallel Iron's immediate predecessor-in-interest—was a Texas limited-liability company with its principal office in Austin, Texas when the parties entered into the Forbearance Agreement.

12. Venue is proper in this Court under 28 U.S.C. § 1391(b) for Counts I, II, and III because a substantial part of the events giving rise to the claims alleged in this Complaint occurred in this judicial district. Venue is proper in this Court for Count IV because it arose out of the same transaction or occurrence as Counts I, II, and III. Venue is also proper in this Court for Count IV under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## IV.   FACTUAL BACKGROUND

### A.   Parallel Iron: shell company, non-practicing entity, serial plaintiff

13. Parallel Iron is the latest in a string of shell companies created to do nothing more than assert patent-infringement claims. Its present incarnation as a Delaware LLC was created in June 2012, days before it filed the first of its 23 Delaware lawsuits asserting the patents-in-suit, and just days after it was forced to dismiss several cases it brought on an unenforceable patent.

14. The patents-in-suit were first assigned to Ring Technology Enterprises, LLC, of Virginia.

15. They were assigned several years later to Ring Technology Enterprises of Texas, LLC, located in Tyler, Texas.

16.     Next, they were assigned in March 2010 to Parallel Iron Texas, located in Austin Texas.

17.     The assignment to Parallel Iron-Texas was recorded with the Patent and Trademark Office on January 19, 2011, the very day it filed its first case, *Parallel Iron, LLC v. Accela Communications, Inc.*, No. 6-11-cv-36 (E.D. Tex. (Tyler)).

18.     In the *Accela* case, Parallel Iron-Texas asserted U.S. Patent No. 7,415,565 ("the '565 patent"). Parallel Iron-Texas continued suing on the '565 patent, filing six more cases in Delaware from September 2011 through April 2012. Parallel Iron-Texas sued a total of 27 defendants on the '565 patent.

19.     Unfortunately, the lawsuits filed on the '565 patent were just part of the pattern of misconduct by Parallel Iron and IPNav. Parallel Iron-Texas did not have standing to sue because the '565 patent was not enforceable by Parallel Iron-Texas. The '565 patent was subject to a terminal disclaimer, requiring that the '565 patent be commonly owned with an earlier patent. Unaware that Parallel Iron-Texas had no right to enforce the '565 patent, many of Parallel Iron-Texas's targets settled out to avoid the high cost of litigation. But when one of the targets discovered the lawsuit's fatal defect, Parallel Iron-Texas immediately dismissed all but one of the remaining defendants (the last defendant, EMC, was not dismissed until July 2012).

20.  Days later, Parallel Iron—the defendant here—was formed as a Delaware LLC. Within weeks it filed 19 of the 23 suits it has filed (so far) on the patents-in-suit.

B.  **Parallel Iron's initial assertions against Rackspace**

21.  In December 2010, Rackspace received a letter (Exhibit A) from IPNav, which describes itself as "a leading global intellectual property advisory firm."

22.  IPNav claimed that it had "been engaged by [a] client who owns valuable patents and related intellectual property directed to the field of data storage." IPNav further implied that certain unnamed Rackspace products infringed this unnamed client's unspecified patents:

> Our client has completed an analysis of your products and believes that your company makes uses or sells products or services that would benefit from a license to certain of our client's patents.

23.  IPNav asked to discuss licensing opportunities with Rackspace, but only if Rackspace would sign a "Confidentiality and Forbearance Agreement" that would preclude Rackspace from filing a declaratory-judgment action against IPNav or its client.

24.  IPNav's letter gave Rackspace 10 days to respond, and included not-so-subtle litigation threats:

> Our client is focused on addressing these issues without the need for costly and protracted litigation.
>
> ***
>
> As stated above, our client's preferred approach is to conclude licensing discussions without resorting to litigation. We hope you share this objective.

25. Unable to respond to these threats without knowing the substance of the claims—or even the patent numbers IPNav was referring to—Rackspace Hosting, Inc. (the parent company of plaintiff Rackspace US, Inc.) ultimately entered into a "Forbearance Agreement" with IPNav and its unnamed client (Exhibit B).

26. The parties entered into the Forbearance Agreement so they could "engage in discussions to determine whether Rackspace may benefit from a license to certain patents."

27. Each party—*i.e.*, Rackspace, on the one hand, and IPNav and IPNav's unidentified client, on the other—agreed "that it [would] not bring litigation against the other Party from the date of execution of [the Forbearance Agreement] until 30 days after either Party provides written notice to the other Party that discussions between the Parties have ended." The parties also acknowledged that specific performance or injunctive relief would properly remedy a breach of the Forbearance Agreement.

28. IPNav soon thereafter identified three patents at issue: the '662, '565, and '177 patents, as well as one U.S. patent application, Application No. 12/476,212 ("the '212 application"). The '212 application ultimately issued as the '388 patent.

29. At the time, the '662, '565, and '177 patents and the '212 application were assigned to Parallel Iron-Texas. Thus, Parallel Iron-Texas—Parallel Iron's immediate predecessor in interest—was the unnamed party to the Forbearance Agreement.

30. Although the parties and their counsel exchanged a series of letters and emails through July 2011 regarding Rackspace's alleged infringement, the parties did not reach an agreement. Neither party, however, provided the other with "written notice to the other Party that discussions between the Parties have ended."

C. **Parallel Iron sues Rackspace in violation of the parties' Forbearance Agreement**

31. As explained above, Parallel Iron has thus far filed 23 lawsuits in Delaware asserting the '662, '177, and '388 patents. The 23rd and most recent of those Delaware lawsuits (the Delaware Action) targets Rackspace and a number of co-defendants whose connection—aside from their alleged infringement of the Parallel Iron patents—is their alleged use of the open-source Hadoop Distributed File System ("HDFS").

32. Despite the validly executed Forbearance Agreement and the parties' "hope to meet amicably and constructively without the risk that the licensing discussions could precipitate litigation," Parallel Iron sued Rackspace in Delaware without providing the agreed notice. In other words, Parallel Iron willfully ignored its own agreement.

33. Because Parallel Iron materially breached the parties' Forbearance Agreement, Rackspace is no longer bound by it. Thus, this Complaint, unlike the Delaware Action, is properly filed.

## V. COUNT I:
## DECLARATORY JUDGMENT OF
## NON-INFRINGEMENTOF THE '662 PATENT

34. Rackspace refers to and incorporates by reference the allegations contained in Paragraphs 1 through 33 as though set forth fully herein.

35. Parallel Iron is the assignee of record of the '662 patent (Exhibit C).

36. In the Delaware Action, Parallel Iron asserts that Rackspace's use of HDFS infringes the '662 patent. Moreover, in its communications with Rackspace in 2010 and 2011, Parallel Iron (through its agent, IPNav), asserted that Rackspace "would benefit from a license" to the '662 patent. Parallel Iron also contracted with Rackspace (through the Forbearance Agreement) not to sue Rackspace on the '662 patent during the parties' licensing negotiations, which negotiations were never terminated under the terms of the Forbearance Agreement.

37. Rackspace contends that it does not infringe any valid claim of the '662 patent.

38. A valid and justiciable controversy regarding the '662 patent therefore exists between Rackspace and Parallel Iron that is properly presented for judicial relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

## VI. COUNT II:
## DECLARATORY JUDGMENT OF
## NON-INFRINGEMENTOF THE '177 PATENT

39. Rackspace refers to and incorporates by reference the allegations contained in Paragraphs 1 through 38 as though set forth fully herein.

40. Parallel Iron is the assignee of record of the '177 patent (Exhibit D).

41. In the Delaware Action, Parallel Iron asserts that Rackspace's use of HDFS infringes the '177 patent. Moreover, in its communications with Rackspace in 2010 and 2011, Parallel Iron (through its agent, IPNav), asserted that Rackspace "would benefit from a license" to the '177 patent. Parallel Iron also contracted with Rackspace (through the Forbearance Agreement) not to sue Rackspace on the '177 patent during the parties' licensing negotiations, which negotiations were never terminated under the terms of the Forbearance Agreement.

42. Rackspace contends that it does not infringe any valid claim of the '177 patent.

43. A valid and justiciable controversy regarding the '177 patent therefore exists between Rackspace and Parallel Iron that is properly presented for judicial relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

## VII.   COUNT III:
## DECLARATORY JUDGMENT OF
## NON-INFRINGEMENT OF THE '388 PATENT

44. Rackspace refers to and incorporates by reference the allegations contained in Paragraphs 1 through 43 as though set forth fully herein.

45. Parallel Iron is the assignee of record of the '388 patent (Exhibit E).

46. In the Delaware Action, Parallel Iron asserts that Rackspace's use of HDFS infringes the '388 patent. Moreover, in its communications with Rackspace in 2010 and 2011, Parallel Iron (through its agent, IPNav), asserted that Rackspace "would benefit from a license" to the '662 and '177 patents, which patents are a grandparent and parent, respectively, to the '388 patent, and which patents cover

similar subject matter. Parallel Iron also contracted with Rackspace (through the Forbearance Agreement) not to sue Rackspace on the '662 and '177 patents during the parties' licensing negotiations, which negotiations were never terminated under the terms of the Forbearance Agreement. Finally, IPNav identified the '212 application (which issued as the '388 patent) to Rackspace along with the '662 and '177 patents during the parties discussions.

47. Rackspace contends that it does not infringe any valid claim of the '388 patent.

48. A valid and justiciable controversy regarding the '388 patent therefore exists between Rackspace and Parallel Iron that is properly presented for judicial relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

## COUNT IV:
## BREACH OF CONTRACT

49. Rackspace refers to and incorporates by reference the allegations contained in Paragraphs 1 through 48 as though set forth fully herein.

50. Each party agreed "that it [would] not bring litigation against the other Party from the date of execution of [the Forbearance Agreement] until 30 days after either Party provides written notice to the other Party that discussions between the Parties have ended." Parallel Iron provided no such notice, yet sued Rackspace in Delaware. Thus, it breached essentially the only covenant of the contract.

51. Parallel Iron's premature lawsuit amounts to a material breach of the Forbearance Agreement. Rackspace has been completely deprived of the benefit of

the Forbearance Agreement. Rackspace cannot be adequately compensated for Parallel Iron's breach. Parallel Iron cannot cure its breach. Parallel Iron's behavior—breaching the only covenant of the contract—cannot be said to comport with the standards of good faith and fair dealing.

52. IPNav—in addition to Parallel Iron—is liable on the Forbearance Agreement because it was the agent to an unidentified principal. The Forbearance Agreement did not contain any language releasing IPNav from liability.

53. Rackspace has been forced to expend time and money to defend Parallel Iron's wrongfully brought Delaware action.

## VIII.  CONDITIONS PRECEDENT

54. All conditions precedent to Rackspace's claim for relief have been performed or have occurred. Rackspace had fully obeyed the terms of the Forbearance Agreement. Because Parallel Iron committed a material breach of the Forbearance Agreement, Rackspace should be discharged from further performance of the contract and allowed to pursue this action without providing prior notice to Parallel Iron.

## IX.  ATTORNEYS' FEES

55. Pursuant to Chapter 38 of the Texas Civil Practices and Remedies Code, Rackspace seeks an award of its reasonable and necessary attorneys' fees and costs. Written demand for performance will be made more than thirty (30) days before any judgment will be entered in this suit.

## X. JURY DEMAND

56. Rackspace hereby demands trial by jury of all claims alleged in this Complaint.

## XI. PRAYER

57. WHEREFORE, Plaintiff Rackspace US, Inc. prays that the Court grant the following relief:

a) Declare that Rackspace has not infringed, has not contributed to infringement of, and has not induced infringement of any claims of the patent in suit, either literally or under the doctrine of equivalents;

b) Enjoin Parallel Iron and IPNav, their officers, directors, servants, managers, employees, agents, successors and assignees, and all persons in active concert or participation with any of them, from directly or indirectly charging Rackspace with infringement of any claim of the patents-in-suit;

c) Award Rackspace damages in the form of its reasonable and necessary attorneys' fees and costs in defending Parallel Iron's premature lawsuit in violation of the Forbearance Agreement pursuant to Chapter 38 of the Texas Civil Practices and Remedies Code and under equitable principles;

d) Award Rackspace its reasonable and necessary attorneys' fees and costs incurred prosecuting its breach of contract claim pursuant to Chapter 38 of the Texas Civil Practices and Remedies Code;

e) Declare this case exceptional under 35 U.S.C. § 285 and award Rackspace its reasonable attorneys' fees, expenses and costs incurred prosecuting its declaratory judgment actions; and

f) Award Rackspace such other and further relief as this Court deems just and proper.

Dated: April 4, 2013

Respectfully submitted,

*/s/ Lamont A. Jefferson*

_____
Lamont A. Jefferson
Texas State Bar No. 10607800
lamont.jefferson@haynesboone.com
Haynes and Boone, LLP
112 East Pecan Street, Suite 1200
San Antonio, TX 78205
Telephone:   (210) 978-7000
Telecopier:   (210) 978-7450

John R. Emerson
Texas State Bar No. 24002053
russ.emerson@haynesboone.com
William "Travis" Patterson
Texas State Bar No. 24080095
travis.patterson@haynesboone.com
Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone:   (214) 651-5000
Telecopier:   (214) 200-0358

ATTORNEYS FOR PLAINTIFF
RACKSPACE US, INC.