IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| RACKSPACE US, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PARALLEL IRON, LLC and<br>IP NAVIGATION GROUP, LLC,<br><br>Defendants. | Civil Action No. 5:13-cv-00274-OLG |

**DEFENDANT IP NAVIGATION GROUP, LLC'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Donald Puckett
Texas Bar No. 24013358
Amy E. LaValle
Texas State Bar No. 24040529
SKIERMONT PUCKETT LLP
2200 Ross Ave, Suite 4800W
Dallas, TX 75201
Tel: (214) 978-6600
Fax: (214) 978-6601
donald.puckett@skiermontpuckett.com
amy.lavalle@skiermontpuckett.com

Carlos I. Uresti
Texas Bar No. 00785132
THE URESTI LAW FIRM, P.C.
924 McCullough Ave.
San Antonio, TX 78215
Tel: (210) 927 3412
Fax: (210) 921 0430
carlos@urestilaw.com

*Counsel for Defendant*
*IP Navigation Group, LLC*

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT ... 1

II. FACTUAL BACKGROUND ... 2

III. ARGUMENT ... 3

- A. Rackspace Fails to Plead a Legally Plausible Breach by IPNav ... 5
- B. Rackspace Fails to Plead that Rackspace Suffered any Recoverable Damages as a Result of IPNav's Actions ... 8

IV. CONCLUSION ... 10

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3, 4

*De Santis v. Wackenhut Corp.*,
732 S.W.2d 29 (Tex. App.—Houston [14th Dist.] 1987) .......... 5

*E.P. Towne Ctr. Partners, L.P. v. Chopsticks, Inc.*,
242 S.W.3d 117 (Tex. App.—El Paso 2007, no pet.) .......... 5

*Eppler, Guerin & Turner, Inc. v. Kasmir*,
685 S.W.2d 737 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) .......... 6

*Howard v. JP Morgan Chase Bank, N.A.*,
No. SA-12-CV-00440-DAE, 2013 U.S. Dist. LEXIS 54433 (W.D. Tex. Apr. 17, 2013) .. 4, 5, 8

*Infomart (India) PVT., Ltd. v. Metrowerks, Corp.*,
No. 3:04-CV-1299-N, 2005 U.S. Dist. LEXIS 11095 (N.D. Tex. Feb. 7, 2005) .......... 5, 8

*Janvey v. Thompson & Knight, LLP*,
No. 3:03-CV-158-M, 2004 U.S. Dist. LEXIS 188 (N.D. Tex. Jan. 5, 2004) .......... 5, 8

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
594 F.3d 383 (5th Cir. 2010) .......... 4

*Mars, Inc. v. Coin Acceptors, Inc.*,
527 F.3d 1359 (Fed. Cir. 2008) .......... 9

*Martinez v. Wells Fargo Bank, N.A.*,
No. SA-12-CV-789-XR, 2013 U.S. Dist. LEXIS 52784 (W.D. Tex. Apr. 12, 2013) .......... 4

*Nadeau Painting Specialist, Ltd. v. Dalcor Prop. Mgmt.*,
No. 03-06-00060-CV, 2008 Tex. App. LEXIS 5356 (Tex. App.—Austin July 18, 2008) .......... 6

*Port Ship Serv., Inc. v. Int'l Ship Mgmt. & Agencies Serv., Inc.*,
800 F.2d 1418 (5th Cir. 1986) .......... 6

*Port Ship Serv., Inc. v. Norton, Lilly & Co.*,
883 F.2d 23 (5th Cir. 1989) .......... 6

*Richter v. Wagner Oil Co.*,
90 S.W.3d 890 (Tex. App.—San Antonio 2002, no pet.)) .......... 4

*Rios v. City of Del Rio*,
444 F.3d 417 (5th Cir. 2006) .......... 4

*Roe v. Ladymon*,
318 S.W.3d 502 (Tex. App.—Dallas 2010, no pet.) .......... 6

*Santos v. State Farm Lloyds, Inc.*,
No. SA-06-CA-650-FB, 2006 U.S. Dist. LEXIS 94607 (W.D. Tex. Nov. 3, 2006) .......... 6

*Schaeffer v. O'Brien*,
39 S.W.3d 719 (Tex. App.—Eastland 2001, pet. denied) .......... 6

*Scott v. Sebree*,
986 S.W.2d 364 (Tex. App.—Austin 1999, pet. denied) .......... 10

*Stafford v. Southern Vanity Magazine, Inc.*,
231 S.W.3d 530 (Tex. App.—Dallas 2007, pet. denied) .......... 10

*Westmoreland v. Sadoux*,
299 F.3d 462 (5th Cir. 2002), *cert. denied*, 537 U.S. 1232 (2003) .......... 6

*WiAV Solutions LLC v. Motorola, Inc.*,
631 F.3d 1257 (Fed. Cir. 2010) .......... 9

*XCO Prod. Co. v. Jamison*,
194 S.W.3d 622 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) .......... 5

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Rackspace's Complaint asserts one cause of action against IP Navigation Group ("IPNav")—breach of contract. As pleaded, Rackspace's breach of contract claim against IPNav is deficient and cannot survive past the pleadings stage because Rackspace's Complaint lacks two essential elements of a breach of contract claim.

*First*, Rackspace's Complaint identifies a contract—a Forbearance Agreement—but Rackspace ***fails to allege a breach by IPNav***. Rackspace alleges that Co-Defendant Parallel Iron, LLC ("Parallel Iron") breached the agreement. But Rackspace's only "breach of contract" allegation against IPNav is that IPNav is jointly liable for Parallel Iron's alleged breach because IPNav acted as Parallel Iron's agent. Rackspace's agency theory of liability against IPNav is legally implausible because it turns the principal/agent relationship on its head. Principals are often liable for the actions of their agents—but not vice versa, as Rackspace mistakenly alleges.

*Second*, Rackspace's Complaint fails to plead that Rackspace has suffered any recoverable damages as a result of IPNav's actions. Rackspace does not plead any factual allegations that would support Rackspace's recovery of monetary damages from IPNav, and injunctive relief against IPNav is legally impossible because IPNav has no (and has never had an) ownership interest in the patents in question, and therefore cannot (and need not) be enjoined from enforcing them.

Accordingly, because Rackspace's Complaint against IPNav is insufficient to state a claim and cannot be cured, the Court should dismiss Rackspace's Complaint against IPNav pursuant to Rule 12(b)(6).

## II. FACTUAL BACKGROUND

On April 4, 2013, Rackspace initiated this lawsuit. (Dkt. No. 1.) Rackspace's Complaint includes a Count IV for "Breach of Contract" against both Defendants, Parallel Iron and IPNav. (*Id.* at ¶¶ 49-53.) This breach of contract claim is the only claim asserted by Rackspace against IPNav and is the subject of IPNav's present Motion to Dismiss.

In the "Factual Background" of its Complaint, Rackspace alleges that IPNav first contacted Rackspace in December 2010 on behalf of an unnamed client to discuss patent licensing opportunities. (*Id.* at ¶¶ 22-23.) Through this initial contact, IPNav informed Rackspace that its client owns valuable patents directed to the field of data storage and believes that Rackspace would benefit from a license to certain of the patents. (*Id.* at ¶ 22.) IPNav offered to identify its client's patents, and information outlining the basis for its client's infringement claims, in exchange for Rackspace's agreement not to file a declaratory judgment action against its client. (*Id.* at ¶ 22; Dkt. No. 1-1, Ex. A at 1.)

As pleaded by Rackspace, "each party—i.e., Rackspace, on the one hand, and IPNav and IPNav's unidentified client, on the other—agreed 'that it [would] not bring litigation against the other Party from the date of execution of [the Forbearance Agreement] until 30 days after either Party provides written notice to the other Party that discussions between the Parties have ended.'" (Dkt. No. 1 at ¶ 27.) The parties also agreed that "monetary damages would not adequately compensate an injured Party for [a] breach," that the Forbearance Agreement "shall be specifically enforceable," and "each Party . . . waive[d] any claim or defense that there is an adequate remedy at law for such breach." (Dkt. No. 1-2, Ex. B at 1.)

At the time of formation of the Forbearance Agreement, IPNav made clear that it was acting on behalf of a separate principal (the applicable patent owner). (Dkt. No. 1 at ¶¶ 11, 22-23, 27; Dkt. No. 1-1, Ex. A at 1-3; Dkt. No. 1-2, Ex. B at 1.) IPNav's client was unnamed at the

time that the parties entered into the Forbearance Agreement to prevent Rackspace from filing a declaratory judgment action against the client. (Dkt. No. 1-1, Ex. A at 1-3.) Shortly after the parties entered into the Forbearance Agreement, IPNav disclosed its client's patent numbers to Rackspace. (Dkt. No. 1 at ¶ 28.) Rackspace admits that Parallel Iron was the unnamed party to the Forbearance Agreement because the patents were assigned to Parallel Iron. (*Id.* at ¶ 28.) As Rackspace repeatedly acknowledges in the Complaint, it is undisputed that IPNav "entered into the contract at issue on behalf of . . . Parallel Iron," that IPNav acted as Parallel Iron's "agent," and that Parallel Iron is the "principal" to the Forbearance Agreement. (*Id.* at ¶¶ 5, 11, 22-23, 27; Dkt. No. 1-1, Ex. A at 1-3; Dkt. No. 1-2, Ex. B at 1.)

Rackspace's Complaint is also notable for what it does not plead. In particular, Rackspace does not plead any allegations whatsoever to claim that IPNav breached the Forbearance Agreement. The Complaint also fails to plead that Rackspace has suffered any damages as a result of IPNav's actions and does not contain any factual allegations that would support Rackspace's recovery of any damages, its requested injunctive relief, or any other relief against IPNav under its breach of contract theory.

## III. ARGUMENT

The sparse allegations set forth against IPNav in Rackspace's Complaint cannot plausibly state a claim for breach of contract. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To do so, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

While detailed factual allegations are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Martinez v. Wells Fargo Bank, N.A.*, No. SA-12-CV-789-XR, 2013 U.S. Dist. LEXIS 52784, at *6 (W.D. Tex. Apr. 12, 2013) (quoting *Twombly*, 550 U.S. at 555). Moreover, "[a]lthough the court must take all of the factual allegations in the complaint as true,[1] the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

"Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (quoting MOORE'S FEDERAL PRACTICE ¶ 12.07). "Under Texas law, '[t]he elements in a claim for breach of contract are: (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach.'" *Howard v. JP Morgan Chase Bank, N.A.*, No. SA-12-CV-00440-DAE, 2013 U.S. Dist. LEXIS 54433, at *37-38 (W.D. Tex. Apr. 17, 2013) (quoting *Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 898 (Tex. App.—San Antonio 2002, no pet.)); *Martinez*, 2013 U.S. Dist. LEXIS 52784, at *26.

Rackspace's Complaint against IPNav fails to plead at least two of these essential elements: (1) a legally plausible breach by IPNav; and (2) that Rackspace suffered any recoverable damages as a result of IPNav's actions. Because any attempt by Rackspace to

[1] "When ruling on a motion to dismiss, a court may consider any documents attached to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Martinez*, 2013 U.S. Dist. LEXIS 52784, at *6-7 (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

amend its Complaint would be futile, Rackspace's Complaint against IPNav should be dismissed in its entirety. *See Howard*, 2013 U.S. Dist. LEXIS 54433, at *32 (holding that "[t]he court need not grant a plaintiff leave to amend where amendment would be futile."); *Infomart (India) PVT., Ltd. v. Metrowerks, Corp.*, No. 3:04-CV-1299-N, 2005 U.S. Dist. LEXIS 11095, at *40 (N.D. Tex. Feb. 7, 2005) (denying motion to amend complaint as futile); *Janvey v. Thompson & Knight, LLP*, No. 3:03-CV-158-M, 2004 U.S. Dist. LEXIS 188, *10-11 (N.D. Tex. Jan. 5, 2004) (denying motion to amend as futile because plaintiff could not plead legally sufficient facts).

### A. Rackspace Fails to Plead a Legally Plausible Breach by IPNav

Rackspace's Complaint is completely devoid of any allegations that would establish a breach of the Forbearance Agreement by IPNav. "Breach" means "the failure to perform any promise which forms a whole or part of any agreement, including the refusal of a party to recognize the existence of an agreement or the doing of something inconsistent with its existence." *De Santis v. Wackenhut Corp.*, 732 S.W.2d 29, 34 (Tex. App.—Houston [14th Dist.] 1987), *rev'd in part on other grounds*, 793 S.W.2d 670 (Tex. 1990). "Whether a party's conduct constitutes a breach is a question of law for the court to determine." *E.P. Towne Ctr. Partners, L.P. v. Chopsticks, Inc.*, 242 S.W.3d 117, 123 (Tex. App.—El Paso 2007, no pet.) (citing *XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 632 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)).

In Count IV for "Breach of Contract" against both Defendants, Parallel Iron and IPNav, Rackspace accuses Parallel Iron of breaching the Forbearance Agreement. (Dkt. No. 1 at ¶¶ 50-51.) But Rackspace completely fails to plead that IPNav in any way breached the Forbearance Agreement. Indeed, Rackspace's only allegation in Count IV with respect to IPNav is based on a legally implausible agency theory of liability, i.e., Rackspace alleges that IPNav is also liable "because it was an agent to an unidentified principal." (*Id.* at ¶ 52.)

Rackspace's agency theory is backward. Under an agency theory of liability, the principal (Parallel Iron) may be held vicariously liable for the contracts and torts of its agent; however, the agent (IPNav) normally is not liable for acts committed by or on behalf of the principal. "The general rule is that when an agent contracts for the benefit of a disclosed principal, the agent is not liable on the contracts he makes." *Schaeffer v. O'Brien*, 39 S.W.3d 719, 721 (Tex. App.—Eastland 2001, pet. denied) (citing *Eppler, Guerin & Turner, Inc. v. Kasmir*, 685 S.W.2d 737, 738 (Tex. App.—Dallas 1985, writ ref'd n.r.e.); *Santos v. State Farm Lloyds, Inc.*, No. SA-06-CA-650-FB, 2006 U.S. Dist. LEXIS 94607, at *6-7 (W.D. Tex. Nov. 3, 2006) (citing *Westmoreland v. Sadoux*, 299 F.3d 462, 466-67 (5th Cir. 2002), *cert. denied*, 537 U.S. 1232 (2003) (under Texas law an agent is not ordinarily liable under contract it executes on behalf of its principal, so long as its agency is disclosed)); *Roe v. Ladymon*, 318 S.W.3d 502, 521 (Tex. App.—Dallas 2010, no pet.) ("[A]n agent for a disclosed principal is not liable on the principal's contract . . . .").

While, in certain circumstances, an agent can be held liable for acts it commits on behalf of an ***undisclosed*** principal, this exception to the general rule is not applicable here because IPNav ***disclosed*** that it was acting in a representative capacity and identified the principal (Parallel Iron) to Rackspace. "[A]n agent is relieved of liability if a third party has sufficient information to constitute notice of the principal's identity." *Port Ship Serv., Inc. v. Norton, Lilly & Co.*, 883 F.2d 23, 25 (5th Cir. 1989) (citing *Port Ship Serv., Inc. v. Int'l Ship Mgmt. & Agencies Serv., Inc.*, 800 F.2d 1418, 1421 (5th Cir. 1986)). "The inference that the agent is a party to the contract exists [only] until the agent gives such complete information concerning the principal's identity that the principal can be readily distinguished." *Nadeau Painting Specialist, Ltd. v. Dalcor Prop. Mgmt.*, No. 03-06-00060-CV, 2008 Tex. App. LEXIS 5356, at *18-19 (Tex.

App.—Austin July 18, 2008). "[I]f an agent would avoid personal liability, he has the duty to disclose not only that [1] he is acting in a representative capacity but also [2] the identity of his principal." *Id.*

Here, even though Parallel Iron was an unidentified principal at the time that the parties entered into the Forbearance Agreement, it is undisputed that IPNav disclosed the fact that a separate principal existed at that time, and IPNav identified the principal well before any alleged breach. (Dkt. No. 1 at ¶¶ 11, 22-23, 27-28; Dkt. No. 1-1, Ex. A at 1-3; Dkt. No. 1-2, Ex. B at 1.) As detailed above, and as pleaded by Rackspace, IPNav made clear from the outset that it was acting on behalf of a separate principal (a patent owner). (Dkt. No. 1 at ¶¶ 11, 22-23, 27; Dkt. No. 1-1, Ex. A at 1-3; Dkt. No. 1-2, Ex. B at 1.) And, shortly after the parties entered into the Forbearance Agreement—over two years before the alleged breach by Parallel Iron—IPNav expressly identified Parallel Iron by disclosing its client's patents to Rackspace. (Dkt. No. at ¶ 28.)

Under the instant set of facts, IPNav had no choice but to wait until the Forbearance Agreement was executed before disclosing the name of the patent owner and patents. Had IPNav disclosed the identity of Parallel Iron or its patents earlier, Rackspace could have (and most likely would have) filed a declaratory judgment action against Parallel Iron, which would have frustrated the sole purpose of the parties entering into the Forbearance Agreement. In fact, Rackspace admits that it knew Parallel Iron was the unnamed party to the Forbearance Agreement as soon as it received the patent numbers because it is publicly recorded that the patents are assigned to Parallel Iron. (*Id.* at ¶ 28.)

Further, Rackspace repeatedly acknowledges in the Complaint that IPNav "entered into the contract at issue on behalf of . . . Parallel Iron," that IPNav acted as Parallel Iron's "agent,"

and that Parallel Iron is the "principal" to the Forbearance Agreement. (*Id.* at ¶¶ 5, 11, 22-23, 27; Dkt. No. 1-1, Ex. A at 1-3; Dkt. No. 1-2, Ex. B at 1.) Based on the facts as pleaded by Rackspace, there is no question that Rackspace had actual knowledge of the existence of a separate principal and knew that the principal was, in fact, Parallel Iron. Rackspace cannot now hold IPNav (the agent) liable for any alleged breach by Parallel Iron (the principal).

In this case, additional factual details will not make Rackspace's breach of contract claim against IPNav any more plausible. It is undisputed that Rackspace knew that IPNav was acting as an agent on behalf of another party from the time of formation of the contract and that IPNav disclosed the actual name of its client immediately after Rackspace was contractually prohibited from filing a declaratory judgment action against the client. IPNav executed the Forbearance Agreement on behalf of its client on December 20, 2010. (Dkt. No. 1-2, Ex. B at 1.) Three days later, on December 23, 2010, IPNav provided copies of the client's patents and the name of the client, Parallel Iron, to Rackspace. (Dkt. No. at ¶¶ 28-29.)

There are no factual allegations that Rackspace could possibly add to its Complaint to save its breach of contract claim against IPNav. Any amendment would be futile; therefore, the Court need not grant Rackspace leave to amend. *See Howard*, 2013 U.S. Dist. LEXIS 54433, at *32; *Infomart*, 2005 U.S. Dist. LEXIS 11095, at *40; *Janvey*, 2004 U.S. Dist. LEXIS 188, *10-11.

**B. Rackspace Fails to Plead that Rackspace Suffered any Recoverable Damages as a Result of IPNav's Actions**

As discussed above, Rackspace's Complaint fails to plead that Rackspace has suffered any damages as a result of IPNav's actions because it does not plead a legally plausible breach of the Forbearance Agreement by IPNav. Moreover, Rackspace's Complaint does not contain any

factual allegations that would support any recovery of Rackspace's requested damages or its requested injunctive relief against IPNav under a breach of contract theory.

In Rackspace's "Prayer," Rackspace requests an award of damages against both Parallel Iron and IPNav based on Rackspace's "reasonable and necessary attorneys' fees and costs in defending Parallel Iron's premature lawsuit."  (Dkt. No. 1 at ¶ 57.)  Rackspace also requests specific performance of the Forbearance Agreement, specifically, an injunction to prohibit both Parallel Iron and IPNav "from directly or indirectly charging Rackspace with infringement of any claim of the patents-in-suit."  (Dkt. No. 1 at ¶ 57.)

Rackspace's request for specific performance against IPNav cannot survive past the pleadings stage because an injunction prohibiting IPNav from charging Rackspace with infringement of the patents-in-suit is not legally plausible.  IPNav has not accused Rackspace of infringement, and it has no standing to do so because IPNav is not (and has never been) the patent owner.  *See WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010) ("[T]he touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury."); *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1367 (Fed. Cir. 2008) ("Only a patent owner or an exclusive licensee can have constitutional standing to bring an infringement suit . . . .").  Because IPNav is not (and has never been) the owner or exclusive licensee of the patents-in-suit and cannot assert the patents, there is nothing for the Court to enjoin with respect to IPNav.

In this case, even assuming for the sake of argument that Rackspace could establish a breach of contract by IPNav, Rackspace should not be allowed to recover damages from IPNav for any alleged breach.  The parties specifically agreed that "monetary damages would not

adequately compensate an injured Party for the breach," that the agreement "shall be specifically enforceable," and "each Party . . . ***waive[d] any claim or defense that there is an adequate remedy at law for such breach***."  (Dkt. No. 1-2, Ex. B at 1 (emphasis added).)  In light of Rackspace's agreement that monetary damages would not be "an adequate remedy," Rackspace cannot now claim that damages based on its attorneys' fees and costs in defending Parallel Iron's lawsuit are an appropriate remedy, especially while simultaneously seeking specific performance of the contract.  *See Stafford v. Southern Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied) ("Specific performance . . . is an equitable remedy used as a ***substitute*** for monetary damages when such damages would not be adequate.") (emphasis added) (citing *Scott v. Sebree*, 986 S.W.2d 364, 368 (Tex. App.—Austin 1999, pet. denied)).

## IV.  CONCLUSION

In sum, Rackspace's Complaint against IPNav fails to include two necessary elements of its breach of contract claim: (1) a legally plausible breach by IPNav; and (2) that Rackspace suffered any recoverable damages as a result of IPNav's actions.  For these reasons, Rackspace's Count IV for Breach of Contract against IPNav should be dismissed in its entirety pursuant to Rule 12(b)(6).

Date:  May 3, 2013                           Respectfully Submitted:


    */s/ Donald Puckett*
Donald Puckett
Texas Bar No. 24013358
Amy E. LaValle
Texas State Bar No. 24040529
SKIERMONT PUCKETT LLP
2200 Ross Ave, Suite 4800W
Dallas, TX 75201
Tel:  (214) 978-6600
Fax: (214) 978-6601
donald.puckett@skiermontpuckett.com
amy.lavalle@skiermontpuckett.com

Carlos I. Uresti
Texas Bar No. 00785132
THE URESTI LAW FIRM, P.C.
924 McCullough Ave.
San Antonio, TX 78215
Tel:  (210) 927 3412
Fax: (210) 921 0430
carlos@urestilaw.com

*Counsel for Defendant*
*IP Navigation Group, LLC*

**CERTIFICATE OF SERVICE**

It is hereby certified that on May 3, 2013, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system.

                                                */s/ Donald Puckett*
                                                Donald Puckett