IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RACKSPACE US, INC. | § | |
| | § | CIVIL ACTION NO. |
| Plaintiff, | § | |
| | § | 5:13-cv-00274-OLG |
| v. | § | |
| | § | |
| PARALLEL IRON, LLC and IP | § | JURY DEMAND |
| NAVIGATION GROUP, LLC | § | |
| | § | |
| Defendants. | § | |

# RACKSPACE'S RESPONSE TO IP NAVIGATION GROUP'S <u>MOTION TO DISMISS</u>

May 17, 2013

Lamont A. Jefferson
Texas State Bar No. 10607800
lamont.jefferson@haynesboone.com
Haynes and Boone, LLP
112 East Pecan Street, Suite 1200
San Antonio, TX 78205
Telephone:    (210) 978-7000
Telecopier:    (210) 978-7450

John R. Emerson
Texas State Bar No. 24002053
russ.emerson@haynesboone.com
William "Travis" Patterson
Texas State Bar No. 24080095
travis.patterson@haynesboone.com
Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone:    (214) 651-5000
Telecopier:    (214) 200-0358

ATTORNEYS FOR PLAINTIFF
RACKSPACE US, INC.

## TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................. 1

II. STATEMENT OF FACTS ................................................................................... 1

    A.  IPNav: a "full-service patent-monetization company" ........................... 1

    B.  IPNav and Rackspace enter into the Forbearance Agreement ............... 2

    C.  IPNav's secret client sues Rackspace in violation of the Forbearance Agreement; Rackspace sues IPNav ........................................................ 3

III. ARGUMENT ...................................................................................................... 4

    A.  When Parallel Iron breached, IPNav breached ....................................... 4

        1.  IPNav is a party to the Forbearance Agreement based on the plain meaning of the language of the contract ...................................... 5

        2.  The rule is well settled in Texas—agents are liable for unidentified principals ........................................................................................... 6

        3.  IPNav admits it was an agent for an unidentified principal ............ 9

        4.  IPNav is liable for the breach of the Forbearance Agreement ...... 10

    B.  Rackspace has suffered—and will continue to suffer—actual damages by being forced to defend itself in Delaware .......................................... 10

        1.  Attorneys' fees from the Delaware Action are the actual damages ......... 10

        2.  The remedies clauses in the Forbearance Agreement are not absolute .... 12

        3.  Even if there were no actual damages, dismissal would be improper because Rackspace seeks injunctive relief .............................. 12

    C.  IPNav's "damages" argument is moot because Parallel Iron is entitled to nominal damages ................................................................................. 12

IV. CONCLUSION .................................................................................................. 13

## TABLE OF AUTHORITIES

                                                                  **PAGE(S)**

**CASES**

*A to Z Rental Center v. Burris*,
    714 S.W.2d 433 (Tex. App.—Austin 1986) ............................................................................7

*Baja Energy, Inc. v. Ball*,
    669 S.W.2d 836 (Tex. App.—Eastland 1984) ......................................................................11

*Boyles v. McClure*,
    243 S.W. 1080 (Tex. Comm'n App. 1922) ........................................................................7, 9

*Carter v. Walton*,
    469 S.W.2d 462 (Tex. Civ. App.—Corpus Christi 1971) .......................................................7

*Conley v. Gibson*,
    355 U.S. 41 (1957) ..................................................................................................................4

*DeWitt County Elec. Co-op, Inc. v. Parks*,
    1 S.W.3d 96 (Tex. 1999) .........................................................................................................5

*Espinoza v. Missouri Pacific Railroad Co.*,
    754 F.2d 1247 (5th Cir. 1985) ................................................................................................4

*Gordon v. Leasman*,
    365 S.W.3d 109 (Tex. App.—Houston [1st Dist.] 2011) .......................................................8

*Harris County, Tex. v. CarMax Auto Superstores Inc.*,
    177 F.3d 306 (5th Cir. 1999) ................................................................................................12

*Heritage Resources, Inc. v. NationsBank*,
    939 S.W.2d 118 (Tex. 1996) ..................................................................................................5

*Hideca Petrol. Corp. v. Tampimex Oil Int'l, Ltd.*,
    740 S.W.2d 838 (Tex. App.—Houston [1st Dist.] 1987) .......................................................8

*Hope v. Alley*
    9 Tex. 394 (1853) ..................................................................................................................13

*Houston Pipe Line Co. v. Oxy Petrol., Inc.*,
    597 S.W.2d 57 (Tex. Civ. App.—Corpus Christi 1980) .......................................................13

*ITT Commercial Fin. Corp. v. Riehn*,
    796 S.W.2d 248 (Tex. App.—Dallas 1990) ...........................................................................4

*Jones v. City of Burkburnett*,
    173 F. Supp. 2d 583 (N.D. Tex. 2001) ...................................................................................4

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
    677 F.2d 1045 (5th Cir. 1982) ..................................................................................4

*Lacquement v. Handy*,
    876 S.W.2d 932 (Tex. App.—Fort Worth 1994) ..................................................8, 9

*Lesikar v. Rappeport*,
    33 S.W.3d 282 (Tex. App.—Texarkana 2000) .......................................................10

*Mahoney v. Pitman*,
    43 S.W.2d 143 (Tex. Civ. App.—Amarillo 1931)................................................7, 8

*MBM Fin. Corp. v. Woodlands Operating Co., L.P.*,
    292 S.W.3d 660 (Tex. 2009)...................................................................................13

*New Amsterdam Cas. Co. v. Texas Indus., Inc.*,
    414 S.W.2d 914 (Tex. 1967)...................................................................................10

*Piraino v. U.S. Postal Serv.*,
    69 F. Supp. 2d 889 (E.D. Tex 1999)..........................................................................4

*Port Ship Serv., Inc. v. Int'l Ship Mgmt & Agencies Serv., Inc.*,
    800 F.2d 1418 (5th Cir. 1986) .................................................................................8

*Posey v. Broughton Farm Co.*,
    997 S.W.2d 829 (Tex. App.—Eastland 1999) .........................................................8

*Schaeffer v. O'Brien*,
     39 S.W.3d 719 (Tex. App.—Eastland 2001) ..........................................................6

*Southwestern Bell Media, Inc. v. Trepper*,
    784 S.W.2d 68 (Tex. App.—Dallas 1989)................................................................7

*Standard Fire Ins. Co. v. Stephenson*,
    963 S.W.2d 81 (Tex. App.—Beaumont 1997) ......................................................11

*Turner v. Turner*,
    385 S.W.2d 230 (Tex. 1964)...................................................................................10

**OTHER AUTHORITIES**

1 Attorney's Fees § 8:3 ....................................................................................................11

Restatement (Third) of Agency ....................................................................................6, 7

## I.  INTRODUCTION

This Court should deny IPNav's motion to dismiss.  When Parallel Iron sued Rackspace in Delaware, it breached the parties' Forbearance Agreement.  IPNav is liable for that breach because it is a party to the contract.

It is a party to the contract in two ways.  First, it is a party under the very terms of the contract as shown on the contract's face.  Second, it is a party to the contract as the agent for an unidentified principal—Parallel Iron.  Indeed, it executed the contract on its own behalf, as well as on its client's behalf.  Thus, Rackspace has pleaded a legally plausible breach by IPNav.

IPNav's breach has also caused Rackspace to suffer recoverable damages—namely, its attorneys' fees expended in defending the patent-infringement case that Parallel Iron brought in Delaware in violation of the Forbearance Agreement.  And given that IPNav is likely the party controlling the Delaware litigation, it may be enjoined by this Court along with Parallel Iron.  Finally, even if Rackspace has not suffered recoverable damages and is not entitled to an injunction, Rackspace can recover nominal damages.

Because IPNav is liable for its breach, and that breach has caused (and will continue to cause) Rackspace to suffer recoverable damages, this Court should deny IPNav's motion to dismiss.

## II.  STATEMENT OF FACTS

### A. IPNav: a "full-service patent-monetization company"

IPNav calls itself a "full-service patent-monetization company."  When a client hires IPNav to "monetize" its patents, IPNav takes care of everything.  It is a turnkey operation: it analyzes patent claims and products, coordinates with inventors, and retains patent prosecutors, experts, and outside vendors—the list goes on.  IPNav even hires and supervises the litigators.

And IPNav pays for everything. So when one of its "patent-monetization" clients sues an alleged infringer, IPNav controls the entire process.[1]

### B. IPNav and Rackspace enter into the Forbearance Agreement

In December 2010, IPNav wrote to Rackspace for an unidentified client asserting that certain unidentified Rackspace products or services "would benefit from" a license to certain unidentified patents belonging to IPNav's unidentified client.[2] IPNav also asked Rackspace to agree not to file a declaratory-judgment action against IPNav's unidentified client.[3] Rackspace declined IPNav's invitation to unilaterally disarm, but the parties eventually signed a "Forbearance Agreement."[4]

The Forbearance Agreement is a simple, one-page contract between Rackspace (on the one hand) and IPNav and its secret client (on the other). The parties agreed to "forbear" from suing one another without providing 30 days' written notice.[5] So the parties foresaw a race to the courthouse, and the written-notice provision was meant to ensure a fair race.

Days later, IPNav identified its secret client's patents.[6] But IPNav did not "expressly identif[y] Parallel Iron by disclosing its patents to Rackspace," as it misleadingly states in its motion.[7] IPNav simply identified the patents belonging to "our client,"[8] which patents did not

---

[1] *See* http://www.ipnav.com/what-we-do/ (last visited May 15, 2013).

[2] *See* Original Compl., Ex. A (D.I. 1-1).

[3] *Id.*

[4] *Id.*, Ex. B (D.I. 1-2).

[5] *Id.*

[6] *Id.* at ¶ 28.

[7] Mot. To Dismiss (D.I. 11) at 7.

[8] December 23 e-mail from Erich Spangenberg to Alan Schoenbaum (Ex. A). The e-mail does not identify Parallel Iron, "expressly" or otherwise; it repeatedly references "our client," not "Parallel Iron." The e-mail included a "Highly Confidential" (and thus not included with this brief) attachment listing "PI Worldwide Patents and Applications." It is apparent today that "PI" stood for "Parallel Iron"; it was not clear in December 2010.

identify Parallel Iron as the assignee.[9]  Rackspace and IPNav then corresponded about the infringement allegations for several months, after which the communications simply tailed off. No party, however, gave the requisite formal written notice terminating discussions and starting the 30-day countdown.[10]

### C. IPNav's secret client sues Rackspace in violation of the Forbearance Agreement; Rackspace sues IPNav

IPNav's secret client was Parallel Iron.[11]  Recently, Parallel Iron—presumably at IPNav's direction and control—sued Rackspace and other co-defendants in Delaware (the "Delaware Action").  So instead of a fair start in the race to the courthouse, Parallel Iron jumped the gun. The race was over before Rackspace knew it had begun.

In the Delaware Action, Parallel Iron accuses the defendants of infringing U.S. Patent Nos. 7,197,662, 7,542,177, and 7,958,388 based on the use of software known as Hadoop Distributed File System, which Cloudera, one of the joined defendants, supplied to the other defendants.[12]  Cloudera filed a motion to sever and stay the claims against its customers, which motion is currently pending before the Delaware court.[13]  Rackspace, along with the other ten customer-defendants, joined Cloudera's motion.[14]

---

[9] *See*, *e.g*., Original Compl., Exs. C and D (D.I. 1-3, 1-4) (listing Ring Technology Enterprises as assignee on the face of the patents).  The third patent-in-suit—the '388 patent—did not issue until June 2011.  The assignments to Parallel Iron were not recorded until January 2011, at the earliest.  *See*, *e.g*., http://assignments.uspto.gov/assignments/q?db=pat&qt=pat&reel=&frame=&pat=7197662&pub=&asnr=&asnri=&asne=&asnei=&asns= (PTO assignments recordation page for the '662 patent, showing recordation date of January 19, 2011 for assignment of the '662 patent from Rich Technology Enterprises to Parallel Iron).

[10] Original Compl. (D.I. 1) at ¶ 30.

[11] When IPNav first accused Rackspace of infringing Parallel Iron's patents in 2010, Parallel Iron was a Texas LLC. It later converted to a Delaware LLC.  *See* Original Compl. at ¶¶ 8, 11.

[12] Original Complaint in *Parallel Iron, LLC v. Cloudera, Inc., et al*., Civil Action No. 1:13-cv-443-RGA (Ex. B) at ¶ 17.

[13] Delaware Defs.' Oppening Br. in Supp. of Mot. To Stay (Ex. C).

[14] If the Delaware court grants the parties' motion to sever and stay, Rackspace will ask this Court to stay this case pending the outcome of the Parallel Iron-Cloudera litigation, which will likely resolve the patent-infringement dispute between all parties.  If the Delaware court does not sever and stay Parallel Iron's infringement claims against

Rackspace then filed this lawsuit—the Texas Action—because Parallel Iron filed the Delaware Action in violation of the Forbearance Agreement. Rackspace sued for a declaratory-judgment of noninfringement against Parallel Iron and for breach of contract against both Parallel Iron and IPNav.

Finally, today Rackspace filed an amended complaint to add a prayer for nominal damages in the alternative to actual damages.[15]

### III.   ARGUMENT

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.[16] Because of this high standard, "[t]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."[17]

In ruling on a Rule 12(b)(6) motion the district court must accept the plaintiff's allegations as true or rely upon undisputed matters outside of the pleadings.[18] The court should construe the plaintiff's allegations liberally.[19]

### A. When Parallel Iron breached, IPNav breached

In its Motion to Dismiss, IPNav claims that Rackspace "fails to plead a legally plausible breach by IPNav." IPNav does not argue that the Forbearance Agreement was not breached;

---

Rackspace, Rackspace will move the Delaware court to sever and transfer Parallel Iron's patent-infringement case against Rackspace case to this Court.

[15] First Am. Compl. (D.I. 14). *See ITT Commercial Fin. Corp. v. Riehn*, 796 S.W.2d 248, 257 (Tex. App.—Dallas 1990, no writ) (holding that nominal damages are special damages that must be specifically pleaded). Rackspace is entitled to amend its complaint as a matter of course. Fed. R. Civ. P. 15(a)(1)(B).

[16] *Piraino v. U.S. Postal Serv.*, 69 F. Supp. 2d 889, 894 (E.D. Tex 1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

[17] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citation omitted).

[18] *Jones v. City of Burkburnett*, 173 F. Supp. 2d 583, 586 (N.D. Tex. 2001); *see Espinoza v. Mo. Pac. R.R. Co.*, 754 F.2d 1247, 1249 (5th Cir. 1985).

[19] *Jones*, 173 F. Supp. at 586; *see Kaiser*, 677 F.2d at 1050.

instead, IPNav argues that it is not responsible for the breach because it was merely the agent. Because Rackspace knew IPNav was acting as an agent and later found out the identity of the principal (Parallel Iron), IPNav claims that holding it liable "turns the principal/agent relationship on its head."[20] But IPNav misstates agency law. Not only is IPNav a party to the contract based on a plain reading of the contract, it is also liable as an agent to an unidentified principal.

### 1. IPNav is a party to the Forbearance Agreement based on the plain meaning of the language of the contract

The Forbearance Agreement expressly states that IPNav is a party to the Forbearance Agreement and is therefore liable for its breach. The first sentence of the Forbearance Agreement states:

> **IP Navigation Group, LLC**, acting as licensing advisor to a certain confidential client (IP Navigation Group, LLC is referred to herein collectively with client as "IPNav"), **and Rackspace Hosting, Inc.** ("Rackspace"), and the affiliates, subsidiaries, parents, related entities and successors of IPNav and Rackspace, **each a "Party" and collectively, the "Parties,"** wish to engage in discussions to determine whether Rackspace may benefit from a license to certain patents.[21]

When courts interpret an agreement, it gives the agreement's language its plain grammatical meaning unless that would defeat the parties' intent.[22] Courts give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense.[23]

Here, the plain meaning of the Forbearance Agreement is clear—IPNav is a party to the contract. There is no other way to interpret this language.

---

[20] IPNav Mot. To Dismiss (D.I. 11) at 1.

[21] D.I. 1, Exhibit B (emphasis added).

[22] *DeWitt County Elec. Co-op, Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999).

[23] *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

## 2. The rule is well settled in Texas—agents are liable for unidentified principals

IPNav is also a party to the Forbearance Agreement under Texas agency law. There are three types of principals in agency law—disclosed, undisclosed, and unidentified:[24]

1) <u>Disclosed Principal</u>: A principal is disclosed if, when an agent and a third party interact, the third party has notice that the agent is acting for a principal and has notice of the principal's identity.

2) <u>Undisclosed Principal</u>: A principal is undisclosed if, when an agent and a third party interact, the third party has no notice that the agent is acting for a principal.

3) <u>Unidentified Principal</u>: A principal is unidentified if, when an agent and a third party interact, the third party has notice that the agent is acting for a principal but does not have notice of the principal's identity.[25]

The distinctions between the three types of principals are important because the agent's liability is based on which type of principal he represents. Rackspace and IPNav agree on the liability of agents when representing <u>disclosed principals</u> and <u>undisclosed principals</u>:

- "'The general rule is that when an agent contracts for the benefit of a <u>disclosed principal</u>, the agent is not liable on the contracts he makes.'"[26]

- "[A]n agent can be held liable for acts it commits on behalf of an <u>undisclosed principal</u> . . . ."[27]

But what IPNav fails to realize is that there is a third type of principal—what the law recognizes as an "unidentified" or "partially disclosed" principal. That is the situation here—Rackspace had "notice that the [IPNav was] acting for a principal but [did] not have notice of the principal's identity [at the time of the Forbearance Agreement]."[28]

---

[24] Restatement (Third) Of Agency § 1.04(2) (2006).

[25] Earlier versions of the Restatement of Agency, as well as Texas case law, refer to unidentified principals as "partially disclosed" principals. They mean the same thing and are used interchangeably in this Response.

[26] D.I. 11, IPNav's Motion to Dismiss p. 6 (emphasis added) (quoting *Schaeffer v. O'Brien*, 39 S.W.3d 719, 721 (Tex. App.—Eastland 2001, pet. denied).

[27] D.I. 11, IPNav's Motion to Dismiss p. 6 (emphasis added).

[28] Restatement (Third) of Agency § 1.04(2)(c) (2006).

The Restatement (Third) of Agency and Texas law are clear—agents are liable for unidentified principals. "When an agent acting with actual or apparent authority makes a contract on behalf of an unidentified principal, (1) the principal and the third party are parties to the contract; and (2) the agent is a party to the contract unless the agent and the third party agree otherwise."[29]

"[T]he rule is **well settled** in [Texas] that an agent makes himself liable if he contracts in his own name without disclosing the name of his principal, although the person contracting with him knew at the time that he was acting as agent only."[30] This rule was regarded as "well settled"[31] in 1922 and has been applied consistently ever since:

- *Mahoney v. Pitman* – "An agent who enters into a contract in his own name without disclosing the identity of his principal renders himself personally liable even though the third person knows that he is acting as agent . . . ."[32]

- *Carter v. Walton* – "In this state, as in most others, an agent who enters into a contract with another without disclosing the identity of his principal is held personally liable under it."[33]

- *A to Z Rental Center v. Burris* – "If an agent would avoid personal liability, he has the duty to disclose not only that he is acting in a representative capacity but also the identity of his principal . . . ."[34]

- *Southwestern Bell Media, Inc. v. Trepper* – "[T]o avoid personal liability, an agent has two duties. He must: (1) disclose his representative capacity, and (2) identify his true principal."[35]

---

[29] *Id.* § 6.02.

[30] *Boyles v. McClure*, 243 S.W. 1080, 1081-82 (Tex. Comm'n App. 1922).

[31] *Id.*

[32] 43 S.W.2d 143, 146 (Tex. Civ. App.—Amarillo 1931, writ ref'd).

[33] 469 S.W.2d 462, 471 (Tex. App.—Corpus Christi, 1971, writ ref'd n.r.e.).

[34] 714 S.W.2d 433, 435 (Tex. App.—Austin 1986, writ ref'd n.r.e.).

[35] 784 S.W.2d 68, 72 (Tex. App.—Dallas 1989, no writ).

- *Lacquement v. Handy* – "[A]s a general rule, if an agent wishes to avoid personal liability on a contract, he has a duty to disclose to the third party, not only the fact he is acting in a representative capacity, but also the *identity* of his principal."[36]

- *Posey v. Broughton Farm Co.* – "[A]n agent acting for a partially-disclosed principal is personally liable on the contract made for her principal just as an agent who fails to disclose the fact of agency would be."[37]

- *Gordon v. Leasman* – "To avoid personal liability, an agent must prove he (1) disclosed his representative capacity to the other contracting party; and (2) identified the true principal for whom he was acting."[38]

The law is also clear that the counterparty—here, Rackspace—has no duty to ascertain the identity of the unidentified principal. That duty belongs to the agent:

- *Hideca Petrol. Corp. v. Tampimex Oil Int'l, Ltd.* – "An agent is not relieved from personal liability on a contract involving an undisclosed or partially disclosed principal merely because the party with whom he deals had a theoretical means of discovering that the agent was acting only in a representative capacity."[39]

- *Port Ship Serv., Inc. v. Int'l Ship Mgmt & Agencies Serv., Inc.* – "[I]t is the agent's duty to disclose the principal's identity, not the third party's duty to ascertain that identity."[40]

- *Mahoney* – "It is the duty of the agent, if he would avoid personal liability on a contract entered into by him on behalf of the principal, to disclose not only the fact that he is acting in a representative capacity but also the identity of his principal, as the person dealt with is not bound to inquire whether or not the agent is acting as such for another."[41]

Further, it is irrelevant that Rackspace learned of Parallel Iron's identity after the contract was already entered into:

- *Posey* – "The disclosure must be made at the time the parties enter the contract."[42]

---

[36] 876 S.W.2d 932, 939 (Tex. App.—Fort Worth 1994, no writ).

[37] 997 S.W.2d 829, 831 (Tex. App.—Eastland 1999, pet. denied).

[38] 365 S.W.3d 109, 114-15 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

[39] 740 S.W.2d 838, 842 (Tex. App.—Houston [1st Dist.] 1987, no writ).

[40] 800 F.2d 1418, 1421 (5th Cir. 1986).

[41] 43 S.W.2d at 146.

[42] 997 S.W.2d at 832.

- *Boyles* – "[A]n agent makes himself liable if he contracts in his own name without disclosing the name of his principal, although the person contracting with him knew at the time that he was acting as agent only." [43]

- *Lacquement* – "[W]hen determining whether an agent has properly disclosed his principal, we must look at the time the contract was entered into."[44]

Thus, even if IPNav's representation were true (and it is not) that it identified Parallel Iron as its principal when it identified its patents, it would be irrelevant because IPNav's alleged disclosure was after it executed the contract.

### 3. IPNav admits it was an agent for an unidentified principal

There is no dispute that **Parallel Iron was an unidentified principal** at the time the parties entered into the Forbearance Agreement. IPNav admits it in its motion:[45]

- "Parallel Iron was an unidentified principal at the time that the parties entered into the Forbearance Agreement . . . ." (p. 7)

- "IPNav's client was unnamed at the time the parties entered into the Forbearance Agreement . . . ." (p. 2-3)

- "[S]hortly after the parties entered into the Forbearance Agreement . . . IPNav expressly identified Parallel Iron by disclosing its client's patents to Rackspace." (p. 7)

- "It is undisputed that Rackspace knew that IPNav was acting as an agent on behalf of another party from the time of formation of the contract and that IPNav disclosed the actual name of its client immediately after [the Forbearance Agreement.]" (p. 8)

- IPNav executed the Forbearance Agreement on behalf of its client on December 23, 2010. Three days later, on December 23, 2010, IPNav provided copies of the client's patents and the name of the client, Parallel Iron, to Rackspace." (p. 8)

---

[43] 243 S.W. 1080, 1081-82 (Tex. Comm'n. App. 1922).

[44] 876 S.W.2d 932, 940 (Tex. App.—Fort Worth 1994, no writ).

[45] D.I. 11, IPNav's Motion to Dismiss.

9

### 4. IPNav is liable for the breach of the Forbearance Agreement

IPNav is a party to the Forbearance Agreement and is therefore liable for its breach. The first sentence of the Forbearance Agreement refers to IPNav and Rackspace as "each a 'Party,' and collectively, the 'Parties.'"[46] Plus, IPNav was acting as an agent to an unidentified or partially disclosed principal—Parallel Iron. Rackspace was under no duty to ascertain the identity of IPNav's "confidential client" and it is irrelevant that Rackspace learned of Parallel Iron's identity after the Forbearance Agreement was executed. As a party to the Forbearance Agreement, when Parallel Iron breached by filing the Delaware Action, IPNav breached as well. It is just as liable for the breach as Parallel Iron.

### B. Rackspace has suffered—and will continue to suffer—actual damages by being forced to defend itself in Delaware

Further, Rackspace has indeed suffered actual, consequential damages as a result of the breach of the Forbearance Agreement.

### 1. Attorneys' fees from the Delaware Action are the actual damages

Rackspace recognizes the general rule that, unless expressly provided for by statute or contract, attorneys' fees incurred in the defense or prosecution of a lawsuit are not recoverable.[47] But every rule has its exception: attorneys' fees incurred in prior litigation are recoverable in a subsequent suit as actual damages.[48] The recovery in such a case is based on equitable grounds because the plaintiff is required to prosecute or defend litigation as a consequence of the defendant's wrongful act.[49] Federal courts, in the exercise of their equitable powers, may award

---

[46] D.I. 1, Exhibit B.

[47] *Turner v. Turner*, 385 S.W.2d 230, 233 (Tex. 1964); *New Amsterdam Cas. Co. v. Texas Indus., Inc.*, 414 S.W.2d 914, 915 (Tex. 1967).

[48] *Lesikar v. Rappeport*, 33 S.W.3d 282, 306 (Tex. App.—Texarkana 2000, pet. denied); *see Turner*, 385 S.W.2d at 234.

[49] *Lesikar*, 33 S.W.3d at 306.

attorneys' fees when the interests of justice so require.[50] This exception is found not only in Texas but many other states as well:[51]

> It is generally held that where the wrongful act of the defendant has involved the plaintiff in litigation with others, or placed the plaintiff in such relation with others as makes it necessary to incur expense or protect his or her interest, such expenses, including attorney's fees, should be treated as the legal consequences of the original wrongful act, and may be recovered as damages.

This exception does not just apply where the prior litigation was between different parties as compared to the subsequent litigation.[52]

The exception applies here. In its breach-of-contract action in this case, Rackspace is seeking its attorneys' fees and expenses from defending litigation (the Delaware Action) arising from IPNav and Parallel Iron's wrongful act—namely, filing the Delaware Action in violation of their contractual obligations.

IPNav may argue that the wrongful act—suing Rackspace in violation of the Forbearance Agreement—was in fact committed by Parallel Iron. But IPNav apparently controls its clients' litigation—it decides when, where, and whom to sue. It is the puppet-master; Parallel Iron is the puppet.

As explained above, IPNav calls itself a "full service patent monetization" firm. When a client hires IPNav to "monetize" its patents, IPNav takes care of everything from there. IPNav even retains and pays for its clients' litigation counsel. When Parallel Iron filed the Delaware Action, IPNav was right there with it. The "wrongful act" was committed by IPNav at least as much as it was committed by Parallel Iron.

---

[50] *Baja Energy, Inc. v. Ball*, 669 S.W.2d 836, 838 (Tex. App.—Eastland 1984, no writ).

[51] 1 Attorney's Fees § 8:3 (3d ed.) (citing cases from the 10th Circuit, Alabama, Arizona, Arkansas, California, Colorado, Florida, Hawaii, Illinois, Iowa, Massachusetts, Minnesota, Missouri, Nebraska, New Jersey, New Mexico, North Dakota, Oklahoma, South Dakota, Utah, Virginia, Vermont, Washington, West Virginia, and Wisconsin).

[52] *See Standard Fire Ins. Co. v. Stephenson*, 963 S.W.2d 81, 90-91 (Tex. App.—Beaumont 1997, no pet.).

## 2. The remedies clauses in the Forbearance Agreement are not absolute

The Forbearance Agreement does indeed specify that "monetary damages would not adequately compensate an injured Party for the breach of this Agreement"; that the "Agreement shall be specifically enforceable"; and that "each Party . . . waives any claim or defense that there is an adequate remedy at law for such breach or threatened breach."[53] But just because monetary damages are inadequate does not mean that they are unrecoverable. And IPNav cites no authority for this proposition.

## 3. Even if there were no actual damages, dismissal would be improper because Rackspace seeks injunctive relief

In addition to monetary damages, Rackspace is seeking an injunction against IPNav for its role as a party to the Forbearance Agreement.[54] The express terms of the Forbearance Agreement provide that an injunction would properly issue if the agreement was breached. And, as discussed above, IPNav is directing and controlling Parallel Iron's litigation against Rackspace and the other alleged infringers. Thus, an injunction will be an appropriate remedy against both Parallel Iron and IPNav as result of their puppet master-puppet relationship.[55]

## C. IPNav's "damages" argument is moot because Parallel Iron is entitled to nominal damages

Not only is Rackspace entitled to actual damages and injunctive relief against IPNav, Rackspace has also amended its Complaint to seek an award of nominal damages in the alternative.

---

[53] Original Compl., Ex. B (D.I. 1-2).

[54] D.I 1, Rackspace's Original Complaint and Jury Demand p. 13.

[55] *Cf. Harris County, Tex. v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 314 (5th Cir. 1999) ("[It is a] fundamental principle that an injunction does not bind a non-party unless he stands in a special relationship to the party.").

So even if the Court finds that there are no actual damages in this case, and that it could not enjoin IPNav, Parallel Iron is still entitled to nominal damages. The Texas Supreme Court recently recognized that "nominal damages are available for breach of contract"[56] and that this has been the rule in Texas since at least 1853 when the Supreme Court held:

> The law is, that if the contract is proven to be broken, the law would give some damage, sufficient to authorize a verdict for the plaintiff, although, in the absence of proof of special loss, the damages would be nominal only.[57]

They are "not for compensation; they are for cases in which there are no damages, or none that could ever be proved."[58]  "[M]ere proof of the making and breach fully prove a plaintiff's cause of action for which he is entitled to recover at least nominal damages, regardless of whether actual damages are proved."[59]

IPNav does not dispute that there was a valid contract and that contract was breached. Because it is a party to the contract—both by a plain reading of the contract and because of its role as agent to an unidentified principal—it is liable for the breach of the Forbearance Agreement.

## IV.     CONCLUSION

IPNav is a party to the Forbearance Agreement, both expressly and as the agent of an unidentified principal, whom we now know to be Parallel Iron. That agreement was indisputably breached when Parallel Iron sued Rackspace in Delaware without giving Rackspace its contractually required notice. Now IPNav asks the Court to absolve it of the consequences of the breach. This Court should decline IPNav's invitation to do so.

---

[56] *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 664 (Tex. 2009).

[57] *Hope v. Alley*, 9 Tex. 394, 395 (1853).

[58] *MBM Fin. Corp.*, 292 S.W.3d at 665.

[59] *Houston Pipe Line Co. v. Oxy Petrol., Inc.*, 597 S.W.2d 57, 59 (Tex. Civ. App.—Corpus Christi 1980, no pet.).

IPNav's motion misstates Texas agency law. It is a party to the Forbearance Agreement and is liable for its breach, as both a plain reading of the Forbearance Agreement and long-standing Texas agency-law jurisprudence dictate. Rackspace has suffered—and will continue to suffer—actual damages as a result of that breach. Rackspace may also be entitled to the injunction that IPNav agreed Rackspace would be entitled to in the event of a breach. And even if Rackspace cannot prove actual damages or its entitlement to an injunction, it is entitled to nominal damages.

IPNav should not be allowed to avoid the consequences of its broken promises. This Court should deny IPNav's motion.

Dated: May 17, 2013               Respectfully submitted,


      /s/ *Lamont A. Jefferson*
Lamont A. Jefferson
Texas State Bar No. 10607800
lamont.jefferson@haynesboone.com
Haynes and Boone, LLP
112 East Pecan Street, Suite 1200
San Antonio, TX 78205
Telephone:     (210) 978-7000
Telecopier:     (210) 978-7450

John R. Emerson
Texas State Bar No. 24002053
russ.emerson@haynesboone.com
William "Travis" Patterson
Texas State Bar No. 24080095
travis.patterson@haynesboone.com
Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone:     (214) 651-5000
Telecopier:     (214) 200-0358

ATTORNEYS FOR PLAINTIFF RACKSPACE US, INC.

## CERTIFICATE OF SERVICE

It is hereby certified that on May 17, 2013, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system and all counsel of record was served accordingly.

                                    /s/ *Lamont A. Jefferson*
                                    Lamont A. Jefferson