IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| RACKSPACE US, INC., <br><br> Plaintiff, <br><br> v. <br><br> PARALLEL IRON, LLC and <br> IP NAVIGATION GROUP, LLC, <br><br> Defendants. | Civil Action No. 5:13-cv-00274-OLG |

**DEFENDANT IP NAVIGATION GROUP, LLC'S**
**<u>MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

Donald Puckett
Texas Bar No. 24013358
Amy E. LaValle
Texas State Bar No. 24040529
SKIERMONT PUCKETT LLP
2200 Ross Ave, Suite 4800W
Dallas, TX 75201
Tel:  (214) 978-6600
Fax: (214) 978-6601
donald.puckett@skiermontpuckett.com
amy.lavalle@skiermontpuckett.com

Carlos I. Uresti
Texas Bar No. 00785132
THE URESTI LAW FIRM, P.C.
924 McCullough Ave.
San Antonio, TX 78215
Tel:  (210) 927 3412
Fax: (210) 921 0430
carlos@urestilaw.com

*Counsel for Defendant*
*IP Navigation Group, LLC*

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION AND SUMMARY OF ARGUMENT .................................................. 1

II.    PROCEDURAL BACKGROUND.................................................................................... 3

III.    FACTUAL BACKGROUND ........................................................................................... 3

IV.    ARGUMENT .................................................................................................................... 5

    A.    Rackspace Fails to Plead or Even Identify any Legally Plausible Breach by IPNav ........................................................................................................ 7

        1.    IPNav cannot be held jointly liable for the alleged breach as a party to the Forbearance Agreement. ................................................. 8

        2.    Rackspace's reverse agency theory of liability is implausible. ................ 10

        3.    Rackspace's mutual agency theory of liability is implausible.................. 12

    B.    Rackspace Fails to Plead that Rackspace Suffered any Damages as a Result of IPNav's Actions .................................................................................. 14

    C.    Any Further Amendment to Rackspace's Amended Complaint Would Be Futile. ..................................................................................................................... 18

V.    CONCLUSION............................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Akin, Gump, Strauss, Hauer & Feld, LLP v. Nat'l Dev. & Research Corp.*,
299 S.W.3d 106 (Tex. 2009) ................................................................. 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................. 5, 6

*Ayers v. Johnson*,
No. 06-10403, 2007 U.S. App. LEXIS 21980, 247 Fed. App'x. 534 (5th Cir. 2007) ............. 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 570 (2007) ............................................................................. 5, 6

*Buttross V., Inc. v. Victoria Square Condo Homeowners' Ass'n*,
No. 03-09-00526-CV, 2010 Tex. App. LEXIS 6803 (Tex. App.—Austin Aug. 18, 2010, pet. denied) ........................................................................................ 17

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*,
497 F.3d 546 (5th Cir. 2007) ................................................................. 13

*CTTI Preismeyer, Inc. v. K&O Ltd. P'ship*,
164 S.W.3d 675 (Tex. App.—Austin 2005, no pet.) ................................ 8

*De Santis v. Wackenhut Corp.*,
732 S.W.2d 29 (Tex. App.—Houston [14th Dist.] 1987), *rev'd in part on other grounds*, 793 S.W.2d 670 (Tex. 1990) .............................................................. 7

*E.P. Towne Ctr. Partners, L.P. v. Chopsticks, Inc.*,
242 S.W.3d 117 (Tex. App.—El Paso 2007, no pet.) .............................. 7

*Eppler, Guerin & Turner, Inc. v. Kasmir*,
685 S.W.2d 737 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) .................. 10

*Fernandez-Montes v. Allied Pilots Ass'n*,
987 F.2d 278 (5th Cir. 1993) ......................................................... 5, 6, 14

*Howard v. JP Morgan Chase Bank, N.A.*,
No. SA-12-CV-00440-DAE, 2013 U.S. Dist. LEXIS 54433 (W.D. Tex. Apr. 17, 2013).... 6, 18

*In re Nalle Plastics Family L.P.*,
No. 11-0903, 2013 Tex. LEXIS 396 (Tex. May 17, 2013) ................ 15, 16

*Infomart (India) PVT., Ltd. v. Metrowerks, Corp.*,
    No. 3:04-CV-1299-N, 2005 U.S. Dist. LEXIS 11095 (N.D. Tex. Feb. 7, 2005) .................. 6, 18

*Investin.com Corp. v. Europa Int'l, Ltd.*,
    293 S.W.3d 819 (Tex. App.—Dallas 2009, pet. denied) ........................................................ 8

*Janvey v. Thompson & Knight, LLP*,
    No. 3:03-CV-158-M, 2004 U.S. Dist. LEXIS 188 (N.D. Tex. Jan. 5, 2004) ................... 6, 7, 18

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) ................................................................................................ 5

*Mars, Inc. v. Coin Acceptors, Inc.*,
    527 F.3d 1359 (Fed. Cir. 2008) ........................................................................................ 9, 15

*Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*,
    195 F.3d 765 (5th Cir. 1999) .............................................................................................. 18

*Martinez v. Wells Fargo Bank, N.A.*,
    No. SA-12-CV-789-XR, 2013 U.S. Dist. LEXIS 52784 (W.D. Tex. Apr. 12, 2013) ............. 5, 6

*MBM Fin. Corp. v. Woodlands Operating Co., L.P.*,
    292 S.W.3d 660 (Tex. 2009) ......................................................................................... 16, 17

*Nadeau Painting Specialist, Ltd. v. Dalcor Prop. Mgmt.*,
    No. 03-06-00060-CV, 2008 Tex. App. LEXIS 5356 (Tex. App.—Austin July 18, 2008) ....... 11

*Port Ship Serv., Inc. v. Int'l Ship Mgmt. & Agencies Serv., Inc.*,
    800 F.2d 1418 (5th Cir. 1986) ............................................................................................ 11

*Port Ship Serv., Inc. v. Norton, Lilly & Co.*,
    883 F.2d 23 (5th Cir. 1989) ................................................................................................ 11

*Reliant Energy Servs. v. Enron Can. Corp.*,
    349 F.3d 816 (5th Cir. 2003) ................................................................................................ 8

*Richter v. Wagner Oil Co.*,
    90 S.W.3d 890 (Tex. App.—San Antonio 2002, no pet.) ....................................................... 6

*Rios v. City of Del Rio*,
    444 F.3d 417 (5th Cir. 2006) ................................................................................................ 6

*Roe v. Ladymon*,
    318 S.W.3d 502 (Tex. App.—Dallas 2010, no pet.) ............................................................ 10

*Santos v. State Farm Lloyds, Inc.*,
    No. SA-06-CA-650-FB, 2006 U.S. Dist. LEXIS 94607 (W.D. Tex. Nov. 3, 2006) ................ 10

*Schaeffer v. O'Brien*,
39 S.W.3d 719 (Tex. App.—Eastland 2001, pet. denied) ........................................ 10

*Scott v. Sebree*,
986 S.W.2d 364 (Tex. App.—Austin 1999, pet. denied) ........................................ 15

*Stafford v. Southern Vanity Magazine, Inc.*,
231 S.W.3d 530 (Tex. App.—Dallas 2007, pet. denied) ........................................ 15

*Swallow v. QI, LLC*,
No. 14-10-008589-CV, 2012 Tex. App. LEXIS 2141 (Tex. App.—Houston [14th Dist.] Mar.
20, 2012, pet. denied) ........................................................................................ 17

*Tex. Elec. Util. Constr., Ltd. v. Infrasource Underground Constr. Servs., LLC*,
No. 12-09-00287-CV, 2010 Tex. App. LEXIS 4990 (Tex. App.—Tyler June 30, 2010, pet.
granted)............................................................................................................... 16

*Transitional Learning Cmty. at Galveston, Inc. v. U.S. Office of Pers. Mgmt.*,
220 F.3d 427 (5th Cir. 2000) ................................................................................ 9, 10

*Turner v. Turner*,
385 S.W.2d 230 (Tex. 1965) ................................................................................ 16

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*,
355 F.3d 370 (5th Cir. 2004) ................................................................................ 13

*Westmoreland v. Sadoux*,
299 F.3d 462 (5th Cir. 2002), *cert. denied,* 537 U.S. 1232 (2003) ........................... 10

*WiAV Solutions LLC v. Motorola, Inc.*,
631 F.3d 1257 (Fed. Cir. 2010) ............................................................................ 9, 15

*XCO Prod. Co. v. Jamison*,
194 S.W.3d 622 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).................... 7

## Statutes

Fed. R. Civ. P 12(b)(6)........................................................................................... 2, 3

Fed. R. Civ. P. 15(a)(1)(B) .................................................................................... 3

## Other Authorities

14 TEX. JUR. 3D CONTRACTS § 203 ........................................................................ 8

9 CORBIN ON CONTRACTS § 937 ............................................................................ 8

MOORE'S FEDERAL PRACTICE ¶ 12.07 ................................................................... 6

RESTATEMENT (SECOND) OF CONTRACTS § 10(1) ............................................................................. 8

RESTATEMENT (SECOND) OF TORTS § 914(2) ................................................................................ 16

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Rackspace's Amended Complaint is its second desperate attempt to scrape together the bare minimum of legal elements and factual allegations necessary to maintain a lawsuit against IP Navigation Group ("IPNav").  Rackspace's Amended Complaint purports to assert one cause of action against IPNav—breach of contract.  As pleaded, Rackspace's breach of contract claim against IPNav is deficient and cannot survive past the pleadings stage because Rackspace's Amended Complaint lacks two essential elements of a breach of contract claim.

***First***, Rackspace's Amended Complaint identifies a contract—a Forbearance Agreement—but Rackspace ***fails to allege a breach by IPNav***.  On this point alone, Rackspace's claim should fall.  Rackspace alleges that Co-Defendant Parallel Iron, LLC ("Parallel Iron") breached the agreement by suing Rackspace for patent infringement in Delaware.  But Rackspace fails to allege any legally plausible "breach of contract" allegations against IPNav. Instead, Rackspace incorrectly claims that IPNav is jointly liable for Parallel Iron's alleged breach because: (1) IPNav is a joint party to the agreement with Parallel Iron, (2) IPNav acted as Parallel Iron's agent, and (3) "upon information and belief," Parallel Iron acted as IPNav's agent, i.e., Parallel Iron and IPNav are "mutual agents" of one another.

Even if IPNav is deemed to be a joint party to the agreement, a joint party is not liable on a breach unless it committed the breach or jointly promised performance of the same contractual obligation.  Given that IPNav has no (and has never had an) ownership interest in the patents in question, it is legally impossible for IPNav to have committed the alleged breach or to have even promised not to sue Rackspace for patent infringement.

Rackspace's agency theories of liability against IPNav are also legally implausible. Rackspace repeatedly alleges throughout its Amended Complaint that IPNav acted as and is

liable as Parallel Iron's agent; however, this first agency theory of liability is not plausible in this case.  Principals are often liable for the actions of their agents—but not vice versa, as Rackspace mistakenly alleges.  In its Amended Complaint, Rackspace asserts a second agency theory of liability, "upon information and belief," that Parallel Iron acted as IPNav's agent when it filed the lawsuit in Delaware and claims that Parallel Iron and IPNav are "mutual agents" of one another.  Rackspace alleges no facts in support of its dubious mutual agency theory of liability because it cannot—this theory is internally inconsistent with Rackspace's other factual allegations.

*Second*, Rackspace's Amended Complaint fails to plead that Rackspace has suffered any actual or even nominal damages as a result of IPNav's actions.  Rackspace does not plead any factual allegations that would support Rackspace's recovery of actual monetary damages or nominal damages from IPNav, and injunctive relief against IPNav is legally impossible because, again, IPNav is not the owner of the patents in question, and therefore cannot (and need not) be enjoined from enforcing them.

Accordingly, because Rackspace's Amended Complaint against IPNav is insufficient to state a claim and cannot be cured, the Court should dismiss Rackspace's Amended Complaint against IPNav, with prejudice, pursuant to Fed. R. Civ. P 12(b)(6).  Rackspace should not be granted leave to file a third complaint—any attempt by Rackspace to amend its complaint yet again would be futile.  When Rackspace drafted its pending Amended Complaint, it had the benefit of IPNav's previous Motion to Dismiss Rackspace's Original Complaint (Dkt. No. 11), which mapped-out Rackspace's multiple pleading deficiencies.  Nevertheless, Rackspace's Amended Complaint still fails to recite the required legal elements, and it lacks supporting factual allegations required to maintain a cause of action for breach of contract.  Because nothing

more can be done to save Rackspace's insufficient Amended Complaint, it should be dismissed, with prejudice, pursuant to Rule 12(b)(6).

## II.   PROCEDURAL BACKGROUND

On April 4, 2013, Rackspace initiated this lawsuit.  (Dkt. No. 1.)  Rackspace's Original Complaint included a Count IV for "Breach of Contract" against both Defendants, Parallel Iron and IPNav.  (*Id.* at ¶¶ 49-53.)  Rackspace's Original Complaint was fatally flawed—missing whole legal elements and supporting facts necessary to state a claim for breach of contract against IPNav.  In lieu of answering Rackspace's defective pleading, on May 3, 2013, IPNav filed a Motion to Dismiss pursuant to Rule 12(b)(6).  (Dkt. No. 11.)  On May 17, 2013, in conjunction with its Response to IPNav's Motion to Dismiss, Rackspace filed an Amended Complaint (Dkt. No. 14) pursuant to Fed. R. Civ. P. 15(a)(1)(B), which is the subject of IPNav's present Motion to Dismiss.

Rackspace's Amended Complaint pleads several new factual allegations and a new claim for nominal damages in support of its breach of contract claim against IPNav.  But these new allegations cannot save Rackspace's breach of contract claim against IPNav—Rackspace's Amended Complaint essentially is no better than its Original Complaint.

## III.   FACTUAL BACKGROUND

In the "Factual Background" of its Amended Complaint, Rackspace alleges that IPNav first contacted Rackspace in December 2010 on behalf of an unnamed client to discuss patent licensing opportunities.  (Dkt. No. 14 at ¶¶ 22-23.)  Through this initial contact, IPNav informed Rackspace that its client owns valuable patents directed to the field of data storage and believes that Rackspace would benefit from a license to certain of the patents.  (*Id.* at ¶ 22.)  IPNav offered to identify its client's patents, and information outlining the basis for its client's

infringement claims, in exchange for Rackspace's agreement not to file a declaratory judgment action against its client.  (*Id.* at ¶ 22; Dkt. No. 14-1, Ex. A at 1.)

As pleaded by Rackspace, "each party—i.e., Rackspace, on the one hand, and IPNav and IPNav's unidentified client, on the other—agreed 'that it [would] not bring litigation against the other Party from the date of execution of [the Forbearance Agreement] until 30 days after either Party provides written notice to the other Party that discussions between the Parties have ended.'"  (Dkt. No. 14 at ¶ 27.)  The parties also agreed that "monetary damages would not adequately compensate an injured Party for [a] breach," that the Forbearance Agreement "shall be specifically enforceable," and "each Party . . . waive[d] any claim or defense that there is an adequate remedy at law for such breach."  (Dkt. No. 14-2, Ex. B at 1.)

At the time of formation of the Forbearance Agreement, IPNav made clear that it was acting on behalf of a separate principal (the applicable patent owner).  (Dkt. No. 14 at ¶¶ 11, 22-23, 27; Dkt. No. 14-1, Ex. A at 1-3; Dkt. No. 14-2, Ex. B at 1.)  IPNav's client was unnamed at the time that the parties entered into the Forbearance Agreement to prevent Rackspace from filing a declaratory judgment action against the client.  (Dkt. No. 14-1, Ex. A at 14-3.)  Shortly after the parties entered into the Forbearance Agreement, IPNav disclosed its client's patent numbers to Rackspace.  (Dkt. No. 14 at ¶ 28.)  Rackspace admits that Parallel Iron was the unnamed party to the Forbearance Agreement because the patents were assigned to Parallel Iron. (*Id.* at ¶ 29.)  As Rackspace repeatedly acknowledges in the Amended Complaint, it is undisputed that IPNav "entered into the contract at issue on behalf of . . . Parallel Iron," that IPNav acted as Parallel Iron's "agent," and that Parallel Iron is the "principal" to the Forbearance Agreement.  (*Id.* at ¶¶ 5, 11, 22-23, 27, 36, 41, 46, 52; Dkt. No. 14-1, Ex. A at 1-3; Dkt. No. 14-2, Ex. B at 1.)

Rackspace's Amended Complaint is also notable for what it does not plead.  In particular, Rackspace does not plead any allegations whatsoever to claim that IPNav breached the Forbearance Agreement.  The Amended Complaint also fails to plead that Rackspace has suffered any damages as a result of IPNav's actions and does not contain any factual allegations that would support Rackspace's recovery of any damages, its requested injunctive relief, or any other relief against IPNav under its breach of contract theory.

## IV.   ARGUMENT

The sparse allegations set forth against IPNav in Rackspace's Amended Complaint cannot plausibly state a claim for breach of contract.  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To do so, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

While detailed factual allegations are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Martinez v. Wells Fargo Bank, N.A.*, No. SA-12-CV-789-XR, 2013 U.S. Dist. LEXIS 52784, at *6 (W.D. Tex. Apr. 12, 2013) (quoting *Twombly*, 550 U.S. at 555).  Moreover, "[a]lthough the court must take all of the factual allegations in the complaint as true,[1] the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555); *see also Fernandez-Montes v. Allied Pilots*

---

[1] "When ruling on a motion to dismiss, a court may consider any documents attached to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Martinez*, 2013 U.S. Dist. LEXIS 52784, at *6-7 (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

*Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Martinez*, 2013 U.S. Dist. LEXIS 52784, at *6 (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555).

"Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (quoting MOORE'S FEDERAL PRACTICE ¶ 12.07). "Under Texas law, '[t]he elements in a claim for breach of contract are: (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach.'" *Howard v. JP Morgan Chase Bank, N.A.,* No. SA-12-CV-00440-DAE, 2013 U.S. Dist. LEXIS 54433, at *37-38 (W.D. Tex. Apr. 17, 2013) (quoting *Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 898 (Tex. App.—San Antonio 2002, no pet.)); *Martinez*, 2013 U.S. Dist. LEXIS 52784, at *26.

Rackspace's Amended Complaint against IPNav fails to plead at least two of these essential elements: (1) a legally plausible breach by IPNav; and (2) that Rackspace suffered any actual or nominal damages as a result of IPNav's actions. Because any attempt by Rackspace to further amend its complaint would be futile, Rackspace's Amended Complaint against IPNav should be dismissed in its entirety. *See Howard*, 2013 U.S. Dist. LEXIS 54433, at *32 (holding that "[t]he court need not grant a plaintiff leave to amend where amendment would be futile."); *Infomart (India) PVT., Ltd. v. Metrowerks, Corp.*, No. 3:04-CV-1299-N, 2005 U.S. Dist. LEXIS 11095, at *40 (N.D. Tex. Feb. 7, 2005) (denying motion to amend complaint as futile); *Janvey v. Thompson & Knight, LLP*, No. 3:03-CV-158-M, 2004 U.S. Dist. LEXIS 188, *10-11 (N.D. Tex.

Jan. 5, 2004) (denying motion to amend as futile because plaintiff could not plead legally sufficient facts).

### A.   Rackspace Fails to Plead or Even Identify any Legally Plausible Breach by IPNav

Rackspace's Amended Complaint is completely devoid of any allegations that would establish a breach of the Forbearance Agreement by IPNav.  "Breach" means "the failure to perform any promise which forms a whole or part of any agreement, including the refusal of a party to recognize the existence of an agreement or the doing of something inconsistent with its existence." *De Santis v. Wackenhut Corp.*, 732 S.W.2d 29, 34 (Tex. App.—Houston [14th Dist.] 1987), *rev'd in part on other grounds*, 793 S.W.2d 670 (Tex. 1990).  "Whether a party's conduct constitutes a breach is a question of law for the court to determine." *E.P. Towne Ctr. Partners, L.P. v. Chopsticks, Inc.*, 242 S.W.3d 117, 123 (Tex. App.—El Paso 2007, no pet.) (citing *XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 632 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)).

In Count IV for "Breach of Contract" against both Defendants, Parallel Iron and IPNav, Rackspace accuses Parallel Iron of breaching the Forbearance Agreement by suing Rackspace for patent infringement in Delaware.  (Dkt. No. 14 at ¶¶ 50-51.)  But Rackspace completely fails to plead that IPNav in any way breached the Forbearance Agreement.  Instead, Rackspace incorrectly claims that IPNav is jointly liable for Parallel Iron's alleged breach because: (1) IPNav is a joint party to the agreement with Parallel Iron, (2) IPNav acted as Parallel Iron's agent, and (3) "upon information and belief," Parallel Iron acted as IPNav's agent, i.e., Parallel Iron and IPNav are "mutual agents" of one another.  None of these joint theories of liability are legally plausible.

1.    **IPNav cannot be held jointly liable for the alleged breach as a party to the Forbearance Agreement.**

Rackspace incorrectly pleads that IPNav is jointly liable for the alleged breach by Parallel Iron of the Forbearance Agreement simply because "IPNav is a party to the contract."  (Dkt. No. 14 at ¶ 52.)  Under Texas law, however, a joint party to a contract is not liable on a breach unless it committed the breach or jointly promised performance of the same contractual obligation.  *See CTTI Preismeyer, Inc. v. K&O Ltd. P'ship*, 164 S.W.3d 675, 684-85 (Tex. App.—Austin 2005, no pet.) (holding that "joint and several liability arises in contract based upon the relationship between the parties and the existence of what amounts to joint promises"); RESTATEMENT (SECOND) OF CONTRACTS § 10(1) (1981) ("Where there are more promisors than one in a contract, some or all of them may promise the same performance, whether or not there are also promises of separate performances."); *Reliant Energy Servs. v. Enron Can. Corp.*, 349 F.3d 816, 823 (5th Cir. 2003) ("[A]s Corbin on Contracts instructs, 'it must be borne in mind that two or more persons may, by a single instrument containing only one promissory expression, bind themselves to pay wholly separate sums of money or to render any other entirely distinct performances.'") (quoting 9 CORBIN ON CONTRACTS § 937 at 685 (interim ed. 2002)).

The question of whether joint parties have promised performance of the same contractual obligation or have made separate promises in a contract is a question of contract interpretation. "[W]hether the liability of several promisors, whose interests are separate, are joint and several depends on the intention of the parties." *Investin.com Corp. v. Europa Int'l, Ltd.*, 293 S.W.3d 819, 828 (Tex. App.—Dallas 2009, pet. denied) (citing 14 TEX. JUR. 3D CONTRACTS § 203).

Here, the Forbearance Agreement states that IPNav is "acting as licensing advisor" on behalf of its confidential client (Parallel Iron).  (Dkt. No. 14-2, Ex. B at 1.)  Although the Forbearance Agreement refers to IPNav and its confidential client (Parallel Iron) collectively as

"Parties," the structure of the Agreement makes plain that IPNav and its confidential client

(Parallel Iron) have separate as well as mutual obligations.  (*Id.*)  The Forbearance Agreement

states that the Parties' intention is "to engage in discussions to determine whether Rackspace

may benefit from a license to certain patents."  (*Id.*)  The Forbearance Agreement states that

IPNav is Parallel Iron's patent licensing advisor—not the holder or owner of the patents.  (*Id.*)

And Rackspace pleads that it was aware from the outset that IPNav, itself, was not the owner of

the patents.  (Dkt. No. 14 at ¶ 22.)  The "Forbearance" provision of the Agreement states that:

> Each Party agrees that it will not bring litigation against the other Party from the
> date of execution of this Agreement until 30 days after either Party provides
> written notice to the other Party that discussions between the Parties have ended.

But given that the Agreement, as a whole, makes clear IPNav has no ownership interest in the

patents in question, it is legally implausible for IPNav to have committed the alleged breach or to

have even promised not to sue Rackspace for patent infringement.  *See WiAV Solutions LLC v.*

*Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010) ("[T]he touchstone of constitutional

standing in a patent infringement suit is whether a party can establish that it has an exclusionary

right in a patent that, if violated by another, would cause the party holding the exclusionary right

to suffer legal injury."); *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1367 (Fed. Cir. 2008)

("Only a patent owner or an exclusive licensee can have constitutional standing to bring an

infringement suit . . . .").

Because IPNav is not (and has never been) the owner or exclusive licensee of the patents-

in-suit and cannot (and has never been able to) assert the patents, as a matter of law, the

"Forbearance" provision cannot plausibly be interpreted in a manner that would include IPNav

as a co-promisor not to sue Rackspace for patent infringement.  Courts must avoid interpreting a

contract in a way that would render a provision meaningless.  *See Transitional Learning Cmty at*

*Galveston, Inc. v. U.S. Office of Pers. Mgmt.*, 220 F.3d 427, 431 (5th Cir. 2000) ("[A] contract

should be interpreted as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous."). Rackspace's theory that IPNav is jointly liable for the alleged breach of contract solely because it was a "party" to the Forbearance Agreement is, therefore, legally implausible, relies on a strained reading of the contract that would render the "Forbearance" provision meaningless, and cannot save Rackspace's breach of contract claim against IPNav.

## 2. Rackspace's reverse agency theory of liability is implausible.

Rackspace also pleads that IPNav is jointly liable for the alleged breach by Parallel Iron of the Forbearance Agreement because "IPNav was acting as an agent" to Parallel Iron.  (Dkt. No. 14 at ¶ 52.)  Rackspace's agency theory is backward.  Under an agency theory of liability, the principal (Parallel Iron) may be held vicariously liable for the contracts and torts of its agent; however, the agent (IPNav) normally is not liable for acts committed by or on behalf of the principal.  "The general rule is that when an agent contracts for the benefit of a disclosed principal, the agent is not liable on the contracts he makes."  *Schaeffer v. O'Brien*, 39 S.W.3d 719, 721 (Tex. App.—Eastland 2001, pet. denied) (citing *Eppler, Guerin & Turner, Inc. v. Kasmir*, 685 S.W.2d 737, 738 (Tex. App.—Dallas 1985, writ ref'd n.r.e.); *Santos v. State Farm Lloyds, Inc.*, No. SA-06-CA-650-FB, 2006 U.S. Dist. LEXIS 94607, at *6-7 (W.D. Tex. Nov. 3, 2006) (citing *Westmoreland v. Sadoux*, 299 F.3d 462, 466-67 (5th Cir. 2002), *cert. denied,* 537 U.S. 1232 (2003) (under Texas law an agent is not ordinarily liable under contract it executes on behalf of its principal, so long as its agency is disclosed)); *Roe v. Ladymon*, 318 S.W.3d 502, 521 (Tex. App.—Dallas 2010, no pet.) ("[A]n agent for a disclosed principal is not liable on the principal's contract . . . .").

While, in certain circumstances, an agent can be held liable for acts it commits on behalf of an ***undisclosed*** principal, this exception to the general rule is not applicable here because

IPNav *disclosed* that it was acting in a representative capacity and identified the principal (Parallel Iron) to Rackspace.  "[A]n agent is relieved of liability if a third party has sufficient information to constitute notice of the principal's identity."  *Port Ship Serv., Inc. v. Norton, Lilly & Co.*, 883 F.2d 23, 25 (5th Cir. 1989) (citing *Port Ship Serv., Inc. v. Int'l Ship Mgmt. & Agencies Serv., Inc.*, 800 F.2d 1418, 1421 (5th Cir. 1986)).  "The inference that the agent is a party to the contract exists [only] until the agent gives such complete information concerning the principal's identity that the principal can be readily distinguished."  *Nadeau Painting Specialist, Ltd. v. Dalcor Prop. Mgmt.*, No. 03-06-00060-CV, 2008 Tex. App. LEXIS 5356, at *18-19 (Tex. App.—Austin July 18, 2008).  "[I]f an agent would avoid personal liability, he has the duty to disclose not only that [1] he is acting in a representative capacity but also [2] the identity of his principal."  *Id.*  In this case, IPNav disclosed both, and therefore Parallel Iron was, in fact, a *disclosed* principal under Texas law.

Even though Parallel Iron was an unidentified principal at the time that the parties entered into the Forbearance Agreement, it is undisputed that IPNav disclosed the fact that a separate principal existed at that time, and IPNav identified the principal well before any alleged breach. (Dkt. No. 14 at ¶¶ 11, 22-23, 27-28; Dkt. No. 14-1, Ex. A at 1-3; Dkt. No. 14-2, Ex. B at 1.)  As detailed above, and as pleaded by Rackspace, IPNav made clear from the outset that it was acting on behalf of a separate principal (a patent owner).  (Dkt. No. 14 at ¶¶ 11, 22-23, 27; Dkt. No. 14-1, Ex. A at 1-3; Dkt. No. 14-2, Ex. B at 1.)  And, shortly after the parties entered into the Forbearance Agreement—over two years before the alleged breach by Parallel Iron—IPNav identified Parallel Iron by disclosing its client's patents to Rackspace.  (Dkt. No. 14 at ¶ 28.)

Under the instant set of facts, IPNav had no choice but to wait until the Forbearance Agreement was executed before disclosing the name of the patent owner and patents.  Had

IPNav disclosed the identity of Parallel Iron or its patents earlier, Rackspace could have (and most likely would have) filed a declaratory judgment action against Parallel Iron, which would have frustrated the sole purpose of the parties entering into the Forbearance Agreement.  In fact, Rackspace admits that it knew Parallel Iron was the unnamed party to the Forbearance Agreement as soon as it received the patent numbers because it is publicly recorded that the patents are assigned to Parallel Iron.  (*Id.* at ¶ 28.)

Further, Rackspace repeatedly acknowledges in the Amended Complaint that IPNav "entered into the contract at issue on behalf of . . . Parallel Iron," that IPNav acted as Parallel Iron's "agent," and that Parallel Iron is the "principal" to the Forbearance Agreement.  (*Id.* at ¶¶ 5, 11, 22-23, 27, 36, 41, 46, 52; Dkt. No. 14-1, Ex. A at 1-3; Dkt. No. 14-2, Ex. B at 1.)  Based on the facts as pleaded by Rackspace, there is no question that Rackspace had actual knowledge of the existence of a separate principal and knew that the principal was, in fact, Parallel Iron.  Rackspace cannot now hold IPNav (the agent) liable for any alleged breach by Parallel Iron (the disclosed principal).

### 3.     Rackspace's mutual agency theory of liability is implausible.

In its Amended Complaint, Rackspace added new allegations, "upon information and belief," that IPNav is jointly liable for the alleged breach by Parallel Iron of the Forbearance Agreement because "[Parallel Iron] was itself acting as the agent for its undisclosed principal, IPNav, which controls and directs the litigation."  (Dkt. No. 14 at ¶ 53.)  This legal conclusion, which is internally inconsistent with Rackspace's factual allegations, cannot save Rackspace's breach of contract claim against IPNav.

Rackspace repeatedly alleges in the Amended Complaint that IPNav "entered into the contract at issue on behalf of . . . Parallel Iron," that IPNav acted as Parallel Iron's "agent," and that Parallel Iron is the "principal" to the Forbearance Agreement.  (Docket No. 14 at ¶¶ 5, 11,

12

22-23, 27, 36, 41, 46, 52.)  Moreover, the exhibits attached to Rackspace's Amended Complaint make clear that IPNav is a "licensing advisor" to Parallel Iron, that Parallel Iron is IPNav's "client," and that the client (Parallel Iron) is the patent owner.  (Dkt. No. 14-1, Ex. A at 1-3; Dkt. No. 14-2, Ex. B at 1.)  Rackspace's Amended Complaint also acknowledges that Parallel Iron is the patent owner and that Parallel Iron, not IPNav, filed the patent infringement suit against Rackspace.  (Dkt. No. 14 at ¶¶ 4, 29.)  All of these factual allegations and others, which were expressly asserted or incorporated by reference in Rackspace's Count IV for Breach of Contract (Dkt. No. 14-1 at ¶ 49), directly contradict Rackspace's new attempt to recast Parallel Iron as the "agent" and IPNav as an "undisclosed principal."[2]  In considering a motion to dismiss for failure to state a claim, the Court should not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."  *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 550 (5th Cir. 2007) (citation omitted).  And if "an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls."  *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citation omitted).  In light of the facts as pleaded and the documents supporting those facts, Rackspace cannot plausibly allege that Parallel Iron acted as IPNav's agent or that Parallel Iron and IPNav are "mutual agents" of one another.

Not only is Rackspace's new mutual agency theory factually inconsistent with Rackspace's other allegations and the supporting exhibits, but Rackspace fails to plead the existence of a joint venture, partnership, alter ego, veil piercing, or anything else that would substantiate its allegation that Parallel Iron and IPNav are "mutual agents" of one another.  Rackspace does make an unsupported allegation that IPNav "controls and directs" Parallel Iron,

---

[2] IPNav was never "undisclosed."  As Rackspace admits in its pleadings, IPNav first contacted and identified itself to Rackspace before the parties entered into the Forbearance Agreement.  (Dkt. No. 14 at ¶ 5.)

but "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes*, 987 F.2d at 284.  As such, Rackspace's mutual agency theory cannot save Rackspace's breach of contract claim against IPNav.

### B.      Rackspace Fails to Plead that Rackspace Suffered any Damages as a Result of IPNav's Actions

As discussed above, Rackspace's Amended Complaint fails to plead that Rackspace has suffered any damages as a result of IPNav's actions because it does not plead a legally plausible breach of the Forbearance Agreement by IPNav.  Moreover, Rackspace's Amended Complaint does not contain any factual allegations that would support any recovery of Rackspace's requested damages or its requested injunctive relief against IPNav under a breach of contract theory.

In Rackspace's "Prayer," Rackspace requests an award of damages against both Parallel Iron and IPNav based on Rackspace's "reasonable and necessary attorneys' fees and costs in defending Parallel Iron's premature lawsuit."  (Dkt. No. 14 at ¶ 58(c).)  Rackspace also requests specific performance of the Forbearance Agreement, specifically, an injunction to prohibit both Parallel Iron and IPNav "from directly or indirectly charging Rackspace with infringement of any claim of the patents-in-suit."  (*Id.* at ¶ 58(b).)

Rackspace's request for specific performance against IPNav cannot survive past the pleadings stage because an injunction prohibiting IPNav from charging Rackspace with infringement of the patents-in-suit is not legally plausible.  IPNav has not accused Rackspace of infringement, and it has no standing to do so because IPNav is not (and has never been) the patent owner.  Because IPNav is not (and has never been) the owner or exclusive licensee of the

patents-in-suit and cannot assert the patents, there is nothing for the Court to enjoin with respect to IPNav.  *See WiAV Solutions*, 631 F.3d at 1265; *Mars*, 527 F.3d at 1367.

With respect to Rackspace's claim for damages, even assuming for the sake of argument that Rackspace could establish a breach of contract by IPNav, Rackspace should not be allowed to recover monetary damages from IPNav for any alleged breach.  The parties specifically agreed that "monetary damages would not adequately compensate an injured Party for the breach," that the agreement "shall be specifically enforceable," and "each Party . . . ***waive[d] any claim or defense that there is an adequate remedy at law for such breach***."  (Dkt. No. 14-2, Ex. B at 1 (emphasis added).)  In light of Rackspace's agreement that monetary damages would not be "an adequate remedy," Rackspace cannot now claim that damages based on its attorneys' fees and costs in defending Parallel Iron's lawsuit are an appropriate remedy, especially while simultaneously seeking specific performance of the contract.  *See Stafford v. Southern Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied) ("Specific performance . . . is an equitable remedy used as a ***substitute*** for monetary damages when such damages would not be adequate.") (emphasis added) (citing *Scott v. Sebree*, 986 S.W.2d 364, 368 (Tex. App.—Austin 1999, pet. denied)).

Moreover, Rackspace's claim for "reasonable and necessary attorneys' fees and costs in defending Parallel Iron's premature lawsuit" as actual damages is legally implausible.  (Dkt. No. 14 at ¶ 58(c).)  Texas law is clear that attorneys' fees recovered pursuant to a breach contract cannot serve as actual damages for the purpose of determining whether Rackspace has suffered "damages" as a result of IPNav's alleged breach of contract.  *In re Nalle Plastics Family L.P.*, No. 11-0903, 2013 Tex. LEXIS 396, at *10 (Tex. May 17, 2013) ("Courts have long

distinguished attorney's fees from damages.")  There is a "difference between compensation owed for an underlying harm and fees that may be awarded for counsel's services."  *Id.* at *15.

Though some Texas courts have recognized exceptions to this general rule, holding that damages can include attorneys' fees incurred as a result of tortious conduct of a third party,[3] this so-called "tort of another" exception would have no applicability here.  As the name implies, the "tort of another" exception is for the recovery of attorneys' fees arising from an earlier tortious action by a third party, and Rackspace has not alleged that a third party has committed any tortious act.  More fundamentally, the "tort of another" exception is for the recovery of attorneys' fees in tort actions, not for breach of contract actions.  *See Akin, Gump, Strauss, Hauer & Feld, LLP v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 119 (Tex. 2009) (explaining that Texas had not yet adopted the "tort of another" exception) (citing *Turner v. Turner*, 385 S.W.2d 230, 234 (Tex. 1965) (explaining that tort of another exception would apply when a party seeks recovery of attorneys' fees as a result of tortious conduct by a third party); Restatement (Second) of Torts § 914(2) (1979).

In its Amended Complaint, Rackspace added a new claim for nominal damages in the alternative to actual damages (Dkt. No. 14 at ¶ 58(d)), but Rackspace did not plead any factual allegations that would support its new claim for nominal damages against IPNav.  The Texas Supreme Court recently clarified that while nominal damages are available for some breach of contract claims, "the rule in Texas has been that nominal damages are ***not*** available when the harm is entirely economic and subject to proof (as opposed to non-economic harm to civil or property rights)."  *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 664-65

---

[3] *Tex. Elec. Util. Constr., Ltd. v. Infrasource Underground Constr. Servs., LLC*, No. 12-09-00287-CV, 2010 Tex. App. LEXIS 4990, at *5-6 (Tex. App.—Tyler June 30, 2010, pet. granted) (recognizing division of authority among Texas appellate courts on whether Texas law recognizes "tort of another" exception for recovery of attorney's fees as damages).

(Tex. 2009) (emphasis added).  Texas courts applying *MBM Financial* have uniformly held that nominal damages are not available when the harm caused by the breach of contract is economic, and subject to proof, as opposed to a harm to civil or property rights.  *Swallow v. QI, LLC*, No. 14-10-008589-CV, 2012 Tex. App. LEXIS 2141, at *18-19 (Tex. App.—Houston [14th Dist.] Mar. 20, 2012, pet. denied) ("Nominal damages are available for breach of contract.  However, nominal damages are not available when the harm is entirely economic and subject to proof.") (citations omitted); *Buttross V., Inc. v. Victoria Square Condo Homeowners' Ass'n*, No. 03-09-00526-CV, 2010 Tex. App. LEXIS 6803, at *11-12 (Tex. App.—Austin Aug. 18, 2010, pet. denied) ("While nominal damages are recoverable for breach of contract, they are only available where a breach has caused *only non-economic harm*.") (emphasis added).

Rackspace has not pleaded that it suffered non-economic harm to its civil or property rights that would support its claim for nominal damages.  The only harm identified in Rackspace's claim for breach of contract is purely economic, i.e., that it "has been forced to expend time and money to defend Parallel Iron's wrongfully brought Delaware action."  (Dkt. No. 14 at ¶ 54.)  Where only economic harm has been pleaded, nominal damages are not available for breach of contract.  *See Swallow*, 2012 Tex. App. LEXIS 2141, at *19 (holding that nominal damages were not available where only economic damages were alleged); *Buttross V.*, 2010 Tex. App. LEXIS 6803, at *12 (holding that nominal damages were not available for breach of contract claim "where, as here, the damages alleged are entirely economic").  Because Rackspace failed to plead that it was damaged as a result of the alleged breach—an essential element to its breach of contract claim—Rackspace's breach of contract claim against IPNav should be dismissed.

**C.    Any Further Amendment to Rackspace's Amended Complaint Would Be Futile.**

In this case, additional factual details will not make Rackspace's breach of contract claim against IPNav any more plausible.  It is undisputed that Rackspace knew that IPNav was acting as an agent on behalf of another party from the time of formation of the contract and that IPNav disclosed the actual name of its client immediately after Rackspace was contractually prohibited from filing a declaratory judgment action against the client.  IPNav executed the Forbearance Agreement on behalf of its client on December 20, 2010.  (Dkt. No. 1-2, Ex. B at 1.)  Three days later, on December 23, 2010, IPNav provided copies of the client's patents and the name of the client, Parallel Iron, to Rackspace.  (Dkt. No. at ¶¶ 28-29.)  It is also undisputed that IPNav was acting as a "licensing advisor" on behalf of Parallel Iron, the patent owner, and that Parallel Iron filed a lawsuit in Delaware against Rackspace for patent infringement.  (Dkt. No. 14 at ¶¶ 4, 29; Dkt. No. 14-1, Ex. A at 1-3; Dkt. No. 14-2, Ex. B at 1.)

There are no factual allegations that Rackspace could possibly add to its Amended Complaint to save its breach of contract claim against IPNav.  Rackspace already took an opportunity to cure the deficiencies in its pleading by amending its complaint once as allowed by Rule 15(a)(1)(B).  Any further amendment would be futile; therefore, the Court need not grant Rackspace leave to amend.  "'A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'"  *Ayers v. Johnson*, No. 06-10403, 2007 U.S. App. LEXIS 21980, 247 Fed. App'x. 534, 535 (5th Cir. 2007) (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999)); *see also Howard*, 2013 U.S. Dist. LEXIS 54433, at *32; *Infomart*, 2005 U.S. Dist. LEXIS 11095, at *40; *Janvey*, 2004 U.S. Dist. LEXIS 188, *10-11.  Because Rackspace has already amended its complaint once to no avail, any further amendment would be futile.

## V.   CONCLUSION

In sum, Rackspace's Amended Complaint against IPNav fails to include two necessary elements of its breach of contract claim: (1) a legally plausible breach by IPNav; and (2) that Rackspace suffered actual or nominal damages as a result of IPNav's actions.  For these reasons, Rackspace's Count IV for Breach of Contract against IPNav should be dismissed in its entirety, with prejudice, pursuant to Rule 12(b)(6).

Date:  June 3, 2013                              Respectfully Submitted:


                                                  /s/ Donald Puckett
                                                 Donald Puckett
                                                 Texas Bar No. 24013358
                                                 Amy E. LaValle
                                                 Texas State Bar No. 24040529
                                                 SKIERMONT PUCKETT LLP
                                                 2200 Ross Ave, Suite 4800W
                                                 Dallas, TX 75201
                                                 Tel:  (214) 978-6600
                                                 Fax: (214) 978-6601
                                                 donald.puckett@skiermontpuckett.com
                                                 amy.lavalle@skiermontpuckett.com

                                                 Carlos I. Uresti
                                                 Texas Bar No. 00785132
                                                 THE URESTI LAW FIRM, P.C.
                                                 924 McCullough Ave.
                                                 San Antonio, TX 78215
                                                 Tel:  (210) 927 3412
                                                 Fax: (210) 921 0430
                                                 carlos@urestilaw.com

                                                 *Counsel for Defendant*
                                                 *IP Navigation Group, LLC*

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that on June 3, 2013, the foregoing was electronically filed with the

Clerk of Court using the CM/ECF system.


       */s/ Donald Puckett*            
Donald Puckett