IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RACKSPACE US, INC. | § | |
| | § | CIVIL ACTION NO. |
| Plaintiff, | § | |
| | § | 5:13-cv-00274-OLG |
| v. | § | |
| | § | |
| PARALLEL IRON, LLC and IP | § | JURY DEMAND |
| NAVIGATION GROUP, LLC | § | |
| | § | |
| Defendants. | § | |

**RACKSPACE'S RESPONSE TO PARALLEL IRON, LLC'S MOTION TO DISMISS,
STAY, TRANSFER, OR SEVER AND TRANSFER**

June 17, 2013

Lamont A. Jefferson
Texas State Bar No. 10607800
lamont.jefferson@haynesboone.com
Haynes and Boone, LLP
112 East Pecan Street, Suite 1200
San Antonio, TX 78205
Telephone:     (210) 978-7000
Telecopier:     (210) 978-7450

John R. Emerson
Texas State Bar No. 24002053
russ.emerson@haynesboone.com
William "Travis" Patterson
Texas State Bar No. 24080095
travis.patterson@haynesboone.com
Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone:     (214) 651-5000
Telecopier:     (214) 200-0358

ATTORNEYS FOR PLAINTIFF
RACKSPACE US, INC.

# TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................. 1

II.    STATEMENT OF FACTS ................................................................... 1

    A.    The Parties ................................................................................. 1

    B.    Parallel Iron and Rackspace sign the Forbearance Agreement ............................... 3

    C.    The nature and stage of the proceedings—the Delaware and Texas Actions ........ 3

III.   ARGUMENT ....................................................................................... 5

    A.    "Compelling circumstances" justify departure from the first-to-file rule .............. 5

        1.    Anticipated litigation—Parallel Iron's false start in the race to the courthouse ................................................................................. 6

        2.    Rackspace should not be penalized for trying to handle this matter amicably ................................................................................. 7

        3.    The Texas Action will advance more swiftly than the Delaware Action ................................................................................. 8

        4.    The Western District of Texas is far more convenient than Delaware ................................................................................. 9

    B.    If the Court is not persuaded by these compelling circumstances justifying departure from the first-to-file rule, it may only transfer to Delaware ................ 10

    C.    If the Court is persuaded by the compelling circumstances in this case, it should deny Parallel Iron's motion to transfer, as the Western District of Texas is a more convenient forum ................................................................................. 10

        1.    Rackspace's choice of venue is entitled to deference and should not be disturbed unless Parallel Iron can prove that another forum is "clearly more convenient" ................................................ 11

        2.    The convenience factors favor the Western District of Texas ................ 12

            a.    Most of the relevant evidence resides in San Antonio ................. 13

            b.    Only San Antonio will have subpoena power over the non-party witnesses ................................................................................. 14

            c.    San Antonio is a more convenient venue for willing witnesses who would have to travel ................................................ 16

            d.    Practical problems in Delaware make trial in San Antonio more easy, expeditious, and inexpensive ................................... 16

            e.    The District of Delaware is almost twice as congested than the Western District of Texas ................................................ 17

            f.    San Antonio has a strong local interest in deciding this case ....... 18

            g.    Texas familiarity with Texas state law ......................................... 19

h.      Balancing the factors.................................................................... 20

IV.    CONCLUSION.............................................................................................. 20

# TABLE OF AUTHORITIES

PAGE(S)

**FEDERAL CASES**

*909 Corp. v. Village of Bolingbrook Police Pension Fund*,
741 F. Supp. 1290 (S.D. Tex. 1990) ............................................................................8

*Amerada Petrol. Corp. v. Marshall*,
381 F.2d 661 (5th Cir. 1967) ............................................................................5, 6, 7

*AT&T Intellectual Prop. I, L.P. v. Airbiquity, Inc.*,
No. 3:08-CV-1637, 2009 WL 774350 (N.D. Tex. Mar. 24, 2009)...............................9, 11, 18

*Cadle Co. v. Whataburger of Alice, Inc.*,
174 F.3d 599 (5th Cir. 1999) ...............................................................................5

*Cal. Sec. Co-Op, Inc. v. Multimedia Cablevision, Inc.*,
897 F. Supp. 316 (E.D. Tex. 1995)...........................................................................6

*Frank's Tong Service, Inc. v. Grey Wolf Drilling Co.*,
No. H-07-637, 2007 WL 5186798 (S.D. Tex. Sept. 11, 2007)..................................6

*Igloo Prods. Corp. v. Mounties, Inc.*,
735 F. Supp. 214 (S.D. Tex 1990) .................................................................5, 6, 7, 9

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)............................................................................15

*In re Microsoft Corp.*,
630 F.3d 1361 (Fed. Cir. 2011)............................................................................19

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009)............................................................................14

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008)............................................................................14

*In re Volkswagen of Am.., Inc.*,
545 F.3d 304 (5th Cir. 2008) (en banc) .....................................................11, 16, 20

*J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*,
No. 6:08-CV-211, 2009 WL 440525 (E.D. Tex. Feb. 20, 2009)............................13

*Johnson Bros. Corp. v. Int'l Bhd. of Painters*,
861 F. Supp. 28 (M.D. La. 1994)...........................................................................6, 7, 8

*Knapper v. Safety Kleen Sys., Inc.*,
No. 9:08-CV-84-TH, 2009 WL 909479 (E.D. Tex. Apr. 3, 2009) .........................13

*Konami Digital Entm't Co. v. Harmonix Music Sys., Inc.*,
   No. 6:08cv286, 2009 WL 781134 (E.D. Tex. Mar. 23, 2009)................................14

*Mann Mfg., Inc. v. Hortex, Inc.*,
   439 F.2d 403 (5th Cir. 1971) ....................................................................................5

*Merle Norman Cosmetics v. Martin*,
   705 F. Supp. 296 (E.D. La. 1988) .....................................................................5, 7, 8

*Save Power Ltd. v. Syntek Fin. Corp.*,
   121 F.3d 947 (5th Cir. 1997) ..................................................................................10

*Service Corp. Int'l v. Loewen Grp. Inc.*,
   No. H-96-3269, 1996 WL 756808 (S.D. Tex. Nov. 29, 1996) ..................................6

*Sutter Corp. v. P&P Indus., Inc.*,
   125 F.3d 914 (5th Cir. 1997) ..................................................................................10

*Tel. Audio Prods., Inc. v. Smith*,
   No. CIV.A.3:97-CV-0863-P, 1998 WL 159932 (N.D. Tex. Mar. 26, 1998) ..........15

*Twin City Ins. Co. v. Key Energy Servs., Inc.*,
   No. H-09-0352, 2009 WL 1544255 (S.D. Tex. June 2, 2009)..............................6, 7

## FEDERAL STATUTES

28 U.S.C. § 1404...............................................................................9, 10, 11, 14

Fed. R. Civ. P. 45(c)(3).........................................................................................14

## OTHER AUTHORITIES

15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and
   Procedure* § 3851 (3d ed. 2008) .........................................................................14

## I.    INTRODUCTION

After Parallel Iron—anonymously, through its agent, IP Navigation Group ("IPNav")—first accused Rackspace of patent infringement in December 2010, the parties signed a Forbearance Agreement that prohibited either party from suing the other without giving 30-days formal written notice.  The Forbearance Agreement allowed the parties to discuss Parallel Iron's infringement claims without fear that the other party would file an anticipatory lawsuit.  In other words, the agreement set the rules for the "race to the courthouse" by defining its start.

While the parties did not resolve Parallel Iron's infringement claims, neither party gave the other the requisite formal written notice that their talks had ended.  But two months ago, Parallel Iron broke its promise not to sue Rackspace by suing Rackspace (among many, many others) for patent infringement in the District of Delaware. Rackspace responded with this declaratory-judgment and breach-of-contract suit.

Now Parallel Iron asks the Court to dismiss Rackspace's suit under the "first-to-file rule." That is, Parallel Iron argues that its Delaware case should proceed over this one because it "won" the race to the courthouse.  But it only won because it cheated.

This Court should not reward cheating.  This Court should deny Parallel Iron's motion.

## II.    STATEMENT OF FACTS

### A.    The Parties

Parallel Iron is part of a complex structure of privately held shell companies created to file patent-infringement cases.  For example, although two of the patents-in-suit were initially assigned to Ring Technology Enterprises, LLC,[1] they were subsequently transferred to Ring Technology Enterprises of Texas, LLC ("Ring Texas"), then to Parallel Iron Texas, and then to

---

[1] Ring Technology Enterprises, LLC changes its name to Ring Technology Enterprises, Inc. on November 14, 2002.

Parallel Iron.[2]  The managers and directors of Ring Texas, some of whom are either named inventors or family members of named inventors, are the same managers and directors of Parallel Iron Texas.[3]  In a prior lawsuit, Parallel Iron Texas disclosed that it is a wholly-owned subsidiary of RING Technology Enterprises, Inc. of Delaware.[4]

Parallel Iron was formed in Delaware in June 2012[5] and within a week it filed the first of 22 patent infringement cases against 44 defendants.[6]

Although it sues in Delaware, in a declaration filed in related suit involving Parallel Iron, Stephen L. Dodd, the founder of the RING entities and Parallel Iron, admitted that no manager or director of Parallel Iron even lives in Delaware—instead "Parallel Iron's members are scattered across the United States, including California, Virginia, Washington, D.C., Maryland, Pennsylvania, New Jersey, and Florida."[7]

Rackspace is a cloud-computing company that delivers enterprise-level hosting services to business of all sizes and kinds throughout the world.[8]  Founded in 1998, Rackspace has grown from a small company but has always been headquartered with a principal place of business in San Antonio, Texas.[9]  Rackspace has been a significant part of the San Antonio community since its beginning, recognized not only as a San Antonio success story but also repeatedly by Fortune

---

[2] Original Complaint in *Parallel Iron, LLC v. Cloudera, Inc.*, Civ. No. 1:13-cv-443-RGA, Exhibits A, C; Declaration of William Travis Patterson in Support of the Rackspace's Response to Parallel Iron, LLC's Motion to Dismiss, Stay, Transfer, or Sever and Transfer, ¶¶ 1-3, Exhibits "A-C."  Unless otherwise noted, all exhibits referenced in this brief are attached to the Declaration of William Travis Patterson in Support of the Rackspace's Response to Parallel Iron, LLC's Motion to Dismiss, Stay, Transfer, or Sever and Transfer.

[3] Exhibits "D" and "E."

[4] Exhibit "F."

[5] Exhibit "G."

[6] Exhibits "H" and "I."

[7] Exhibit "J."

[8] Declaration of Bret Piatt in Support of Rackspace's Response to Parallel Iron, LLC's Motion to Dismiss, Transfer, or Sever and Transfer ("Piatt Decl."), ¶ 4; Exhibit "K," Rackspace.com "About Rackspace."

[9] Piatt Decl. ¶¶ 1, 2, 5.

Magazine as one of the "100 Best Companies to Work For."[10]  Rackspace has no offices, data centers, departments, or divisions located in Delaware.[11]

## B.      Parallel Iron and Rackspace sign the Forbearance Agreement

In December 2010, Parallel Iron (through its agent IPNav) sent Rackspace a threat letter. The vague letter stated that Rackspace "makes, uses or sells products or services that would benefit from a license" of unnamed patents belonging to the then-unidentified Parallel Iron,[12] essentially encouraging Rackspace to license the undisclosed patents or else undoubtedly be sued.[13]  Instead of running straight to the courthouse seeking a declaratory judgment of non-infringement, Rackspace decided to handle the matter amicably.  After declining IPNav's request for a promise not to file a declaratory-judgment suit, Rackspace eventually agreed to a mutual "Forbearance Agreement."[14]

The Forbearance Agreement is simple.  It is a one-page contract in which the parties agreed to "forbear" from suing one another without providing 30 days' written notice.  The purpose of the Forbearance Agreement is also simple—to allow the parties to discuss a licensing agreement without being blindsided by litigation.  Rackspace was blindsided when Parallel Iron filed this lawsuit without providing Rackspace the 30 days' written notice that it had bargained for.

## C.      The nature and stage of the proceedings—the Delaware and Texas Actions

There are currently two cases pending in federal district court involving these parties—one in Delaware and this one in the Western District of Texas.

---

[10] Piatt Decl. ¶ 5; Exhibit "L," 4/8/12 Kens5.com Article.

[11] Piatt Decl. ¶ 7.

[12] Exhibit "M."

[13] *See id.*

[14] Exhibits "N, O."

The Delaware lawsuit is a patent infringement case filed by Parallel Iron against Rackspace and 11 other defendants (the "Delaware Action").  The Delaware Action is the latest in a string of 22 patent-infringement lawsuits that Parallel Iron has filed in Delaware against 44 defendants.[15]  In each case, Parallel Iron asserts infringement of three related patents—U.S. Patent Nos. 7,197,662, 7,542,177, and 7,958,388 (the "patents-in-suit").[16]  Cloudera, Inc. is the supplier of the allegedly infringing software in the Delaware Action.  It has filed a motion to stay the claims against the remaining 11 customer-defendants, including Rackspace.  All defendants have joined that motion, which is currently pending before the court.  Should the Delaware court grant Cloudera's motion and stay the claims against the customer-defendants, Rackspace will ask the Court to stay the claims in this case as well pending the outcome of the Parallel Iron–Cloudera case, which would likely resolve the patent-infringement dispute between all parties.  However, if the Delaware court does not sever and stay Parallel Iron's infringement claims against Rackspace, Rackspace will move the Delaware court to sever and transfer Parallel Iron's patent-infringement case against Rackspace to this Court.

After Parallel Iron breached the Forbearance Agreement, Rackspace filed this lawsuit for declaratory judgment and breach of contract (the "Texas Action").[17]  IPNav has twice filed motions to dismiss and Parallel Iron has filed this motion to dismiss, stay, transfer, or sever and transfer.[18]  Rackspace is separately responding to each defendant's latest motion.

---

[15] Ex. "I."

[16] Orig. Compl., *Parallel Iron, LLC v. Cloudera, Inc.*

[17] Rackspace Orig. Compl. and First Am. Compl. (D.I. 1, 14).

[18] D.I. 11, 17, 18.

## III.    ARGUMENT

### A.    "Compelling circumstances" justify departure from the first-to-file rule

Rackspace recognizes the general first-to-file rule.  "Under the rule, when related cases are pending before two federal courts, the court in which the case was last filed *may* refuse to hear it if the issues raised by the cases overlap."[19] The rule "rests on principles of comity and sound judicial administration."[20]  But the "first-to-file rule is a *discretionary* doctrine"[21] that courts may depart from.[22]  Parallel Iron and IPNav have provided the Court "one of those occasions where the totality of the circumstances demands such a departure."[23]

Under Fifth Circuit precedent, "compelling circumstances" justify departing from the first-to-file rule.[24]  While the Fifth Circuit "did not delineate the 'compelling circumstances' that might preclude application of the first-filed rule,"[25] "later-filed" courts have found plenty of "compelling circumstances," including:

    a)  Anticipatory litigation;

    b)  Penalizing a party attempting to settle;

    c)  Relative progress of each action; and

    d)  Convenience factors.

Three of these reasons justify departing from the first-to-file rule, while the fourth—relative progress of each action—is at worst neutral.

---

[19] *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (emphasis added).

[20] *Id.*

[21] *Id.* (emphasis added).

[22] *Merle Norman Cosmetics v. Martin*, 705 F. Supp. 296, 300 (E.D. La. 1988) (citing *Amerada Petrol. Corp. v. Marshall*, 381 F.2d 661, 661 (5th Cir. 1967)).

[23] *Id.*

[24] *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971).

[25] *Igloo Prods. Corp. v. Mounties, Inc.*, 735 F. Supp. 214, 217 (S.D. Tex 1990).

1.    **Anticipated litigation—Parallel Iron's false start in the race to the courthouse**

The most frequently cited "compelling circumstance" is when the first-filed lawsuit is filed in anticipation of litigation.  Here, Parallel Iron got a false start in the proverbial "race to the courthouse."  Parallel Iron only won the race by breaching the Forbearance Agreement.  Such premature actions are disfavored when used to preempt the other side's lawsuit, even when they are not filed in breach of a Forbearance Agreement or similar covenant not to sue:

- *Amerada Petrol. Corp.* – "That [first-filed lawsuit] apparently was in anticipation of the [later-filed lawsuit] is an equitable consideration which the district court was entitled to take into account."[26]

- *Twin City* – "[S]everal courts in the Fifth Circuit have concluded that an anticipatory suit initiated for the purpose of obtaining a favored forum constitutes a compelling circumstance that justifies a deviation from the first-to-file rule."[27]

- *Frank's Tong Service* – "Anticipatory lawsuits not only deprive a potential plaintiff of his choice of forum, but an anticipatory suit is also one of the compelling circumstances courts cite when declining to apply the first-filed rule."[28]

- *Service Corp. Int'l* – "One such compelling circumstance is when the suit was brought in one forum in anticipation of the opposing party bringing suit in another, less favorable forum."[29]

- *Cal. Sec. Co-Op* – "One such exception to the first-to-file rule is when the first-filed suit is filed in anticipation of the subsequent suit."[30]

- *Johnson Bros.* – "'Compelling circumstances' exist when a [first-filed suit] is filed an anticipation of another lawsuit in order to secure a more favorable forum."[31]

---

[26] 381 F.2d at 663.

[27] *Twin City Ins. Co. v. Key Energy Servs., Inc.*, No. H-09-0352, 2009 WL 1544255, at *5 (S.D. Tex. June 2, 2009) (citing *Frank's Tong Serv.* and *Igloo Products*).

[28] *Frank's Tong Service, Inc. v. Grey Wolf Drilling Co.*, No. H-07-637, 2007 WL 5186798, at *4 (S.D. Tex. Sept. 11, 2007) (citing *Amerada*, 381 F.2d at 663).

[29] *Serv. Corp. Int'l v. Loewen Grp. Inc.*, No. H-96-3269, 1996 WL 756808, at *2 (S.D. Tex. Nov. 29, 1996).

[30] *Cal. Sec. Co-Op, Inc. v. Multimedia Cablevision, Inc.*, 897 F. Supp. 316, 319 (E.D. Tex. 1995) (citing *Amerada*, 381 F.2d at 663).

- *Igloo Products* – "[O]ne of the special circumstances cited by courts that have declined to apply the first-filed rule is an indication that the first-filed suit was initiated in anticipation of the subsequent suit."[32]

- *Merle Norman* – "[A] complaint filed in anticipation of a subsequent suit brought by the defendant to the first action can avoid the operation of the first filed rule."[33]

This "compelling circumstance" clearly applies—Parallel Iron sued Rackspace in Delaware in anticipation of Rackspace filing a declaratory-judgment action in Texas.  The Delaware Action falls squarely within the "anticipated litigation" exception.  Parallel Iron will argue that there was no anticipated litigation because the lawsuit came from left field, which is certainly true.  Parallel Iron blindsided Rackspace.  What was anticipated was that neither party would sue without giving 30 days' written notice.  If the required notice had been given then litigation would indeed be anticipated.  Parallel Iron's Delaware Action is anticipatory litigation.

### 2. Rackspace should not be penalized for trying to handle this matter amicably

The parties entered into the Forbearance Agreement with a "hope to meet amicably and constructively without the risk that the licensing discussions could precipitate litigation between the Parties."[34]

But Parallel Iron sued Rackspace anyway.

In cases like this, courts in this circuit have held that yielding to the first-to-file rule essentially penalizes a party for trying to settle a matter amicably and out of court:

- *Twin City* – "[T]he primary reason courts have recognized the anticipatory suit exception to the first-to-file rule is to avoid penalizing a party that has attempted to settle a dispute out of court."[35]

---

[31] *Johnson Bros. Corp. v. Int'l Bhd. of Painters*, 861 F. Supp. 28, 29 (M.D. La. 1994).

[32] 735 F. Supp. at 217 (citing *Amerada*, 381 F.2d at 663).

[33] 705 F. Supp. at 298.

[34] *Id.*

[35] 2009 WL 1544255, at *5.

- *Johnson Bros.* – "Under the circumstances, the court has little difficulty in concluding that this action is a preemptive strike.  Application of the 'first-filed' rule would penalize the [later-filed suit plaintiff] for its efforts to settle this matter out of court."[36]

- *909 Corp.* – "Application of the first-filed rule could penalize the [later-filed suit plaintiff] for its attempt to make a good faith effort to settle out of court."[37]

- *Merle Norman* – "Potential plaintiffs should be encouraged to attempt settlement discussions (in good faith and with dispatch) prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing before plaintiff files [its own] complaint."[38]

Rackspace kept its promise not to sue.  Parallel Iron, on the other hand, ignored the Forbearance Agreement and blindsided Rackspace with the Delaware Action.  Rackspace should not be penalized for honoring its end of the bargain.

### 3.      The Texas Action will advance more swiftly than the Delaware Action

This case and the Delaware Action are both in their early stages.  Rackspace filed this case within approximately two weeks after Parallel Iron filed the Delaware Action.  Neither case has had a case-management conference or begun discovery.

Rackspace has joined Cloudera's motion to stay the claims against the customer-defendants in the Delaware Action.[39]  Assuming that motion is granted, the "stay will simplify and streamline discovery and trial in [the Delaware Action], because the outcome of Parallel Iron's case against Cloudera will likely resolve Parallel Iron's claims against the Customer

---

[36] 861 F. Supp. at 29-30.

[37] *909 Corp. v. Village of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1293 (S.D. Tex. 1990).

[38] 705 F. Supp. at 299 (quoting *Columbia Pictures Indus., Inc. v. Schneider*, 435 F. Supp. 742, 747-48 (S.D.N.Y. 1977).

[39] Defs.' Mot. to Stay the Claims Against the Customer Defs., Defs.' Opening Br. in Supp., *Parallel Iron, LLC v. Cloudera, Inc.*

Defendants entirely."[40]  Rackspace would therefore file a motion to stay the Texas Action.  But if that motion is denied and litigation with the customer-defendants becomes necessary, then the Western District of Texas can resolve the matter more efficiently than the District of Delaware. Rackspace would thus file a motion to sever and transfer Parallel Iron's infringement claims against it from Delaware to this Court.

In analyzing court congestion, courts routinely rely on statistics from the Administrative Office of the United States Courts that identify the median time from filing to trial for various districts.[41]  In 2012, these statistics show that the average time from filing to trial for civil cases in the Western District of Texas was 15.2 months.[42]  In contrast, the average time from filing to trial in the District of Delaware was nearly twice that long—29.3 months.[43]

While the Delaware Action and the Texas Action are both in their early stages, the Delaware Action will crawl forward due to the court's overloaded docket and the number of parties involved in the litigation.  Proceeding with the Texas Action instead will be faster and more efficient.

**4.      The Western District of Texas is far more convenient than Delaware**

"In determining whether this case presents 'compelling circumstances,' this Court might also look by analogy to the considerations that govern transfer of venue . . . under 28 U.S.C. § 1404(a)."[44]  Section 1404(a) provides that a district court may transfer a case "[f]or the convenience of parties and witnesses" or "in the interests of justice."  As described below, both

---

[40] Defs.' Opening Br. in Supp. at 5, *Parallel Iron, LLC v. Cloudera, Inc.*

[41] *See AT&T Intellectual Prop. I, L.P. v. Airbiquity, Inc.*, No. 3:08-CV-1637, 2009 WL 774350, at *6 (N.D. Tex. Mar. 24, 2009).

[42] Exhibit "P."

[43] Exhibit "Q."

[44] *Igloo Products*, 735 F. Supp. at 218.

the convenience of the parties and witnesses and the interests of justice favor keeping this action

in the Western District of Texas, thereby giving this Court yet another "compelling

circumstance" to justify departure from the first-to-file rule.[45]

**B.    If the Court is not persuaded by these compelling circumstances justifying departure from the first-to-file rule, it may only transfer to Delaware**

Parallel Iron has asked this court to "dismiss pursuant to the first-to-file rule, or, in the

alternative, stay this case in favor of the first-filed case in the District of Delaware."[46]  This

request is improper.

The Fifth Circuit is clear on this issue.  If the later-filed court decides to apply the first-to-

file rule—finding no "compelling circumstances" justifying departure from the discretionary

rule—then "the proper course of action [is] for the [later-filed] court to transfer the case" to the

first-filed court.[47]  The first-filed court can then decide "whether the second suit filed must be

dismissed, stayed, or transferred and consolidated."[48]

**C.    If the Court is persuaded by the compelling circumstances in this case, it should deny Parallel Iron's motion to transfer, as the Western District of Texas is a more convenient forum**

Parallel Iron dedicates just one paragraph in its motion to support its idea that transfer is

proper under 28 U.S.C. § 1404(a).[49]  But a thorough analysis of the 1404(a) convenience factors,

as applied by the Fifth Circuit, shows that transfer is not warranted.  Both the convenience of the

---

[45] Section III.C.

[46] D.I. 18, titled "Defendant Parallel Iron, LLC's Motion to Dismiss Pursuant to the First-to-File Rule, or, in the Alternative, Stay this Case in Favor of the First-Filed Case in the District of Delaware, Transfer this Case to the District of Delaware, or Sever and Transfer the Patent Claims to the District of Delaware."

[47] *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997).

[48] *Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997).

[49] D.I. 18 at 9.

parties and witnesses and the interests of justice heavily favor keeping this case in the Western

District of Texas.

> **1.   Rackspace's choice of venue is entitled to deference and should not be disturbed unless Parallel Iron can prove that another forum is "clearly more convenient"**

Rackspace's choice of venue "is entitled to deference" unless Parallel Iron (or IPNav) can

meet the "significant" burden of showing "good cause" for transferring it to another venue

merely for the sake of convenience.[50]  To show good cause, Parallel Iron must "clearly

demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of

justice.'"[51]  Stated differently, "when the transferee venue is not clearly more convenient than the

venue chosen by the plaintiff, the plaintiff's choice should be respected."[52]

Courts within the Fifth Circuit consider four private-interest and four public-interest

factors in determining whether a movant has shown that the transferee venue is "clearly more

convenient."[53]  The private-interest factors are: "(1) the relative ease of access to sources of

proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the

cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a

case easy, expeditious, and inexpensive."[54]  The public-interest factors are: "(1) the

administrative difficulties flowing from court congestion; (2) the local interest in having

localized interest decided at home; (3) the familiarity of the forum with the law that will govern

---

[50] *In re Volkswagen of Am.., Inc.*, 545 F.3d 304, 315 n.10 (5th Cir. 2008) (en banc); *AT&T*, 2009 WL 774350, at *1.

[51] *Volkswagen*, 545 F.3d at 315 (quoting 28 U.S.C. § 1404(a)).

[52] *Id.*

[53] *Id.*

[54] *Id.*

the case; and (4) the avoidance of unnecessary problems regarding conflict of laws [or in] the application of foreign law."[55]   None of these factors is dispositive.[56]

Parallel Iron has failed to establish that these factors "clearly" weigh in favor of transferring this action to the District of Delaware, and in fact, the evidence shows otherwise. Rackspace's choice to try this case in the Western District of Texas should therefore not be disturbed.[57]

### 2.     The convenience factors favor the Western District of Texas

As summarized in the following chart, and discussed in detail below, the relevant convenience factors strongly favor keeping this case in the Western District of Texas:

| Private-Interest Factors | |
|---|---|
| Ease of Access to Sources of Proof | Weighs Heavily Against Transfer |
| Availability of Compulsory Process | Weighs Heavily Against Transfer |
| Cost of Attendance for Witnesses | Weighs Heavily Against Transfer |
| Practical Problems | Weighs Heavily Against Transfer |
| Public-Interest Factors | |
| Court Congestion | Weighs Heavily Against Transfer |
| Local Interest | Weighs Heavily Against Transfer |
| Familiarity with State Law | Weighs Against Transfer |
| Conflict of Laws | N/A |

---

[55] *Id.*

[56] *Id.*

[57] Piatt Decl. ¶ 13.

### a.    Most of the relevant evidence resides in San Antonio

The first private-interest factor—accessibility to sources of proof—weighs heavily against transfer.  Parallel Iron ignores this factor.

To satisfy its burden, Parallel Iron "must demonstrate that transfer will result in more convenient access to sources of proof."[58]  Parallel Iron must show *specifically* which evidence it intends to rely upon at trial that would otherwise be unduly burdensome or unavailable should this action proceed in San Antonio.[59]  Parallel Iron has not satisfied this burden.  In fact, Parallel Iron makes no argument regarding this factor.

The operative facts of this case arose in Texas—not Delaware.  This case arose from Rackspace's use of open-source software known as Hadoop Distributed File System ("HDFS"), a version of which Cloudera (one of twelve joined defendants in this action) developed and sold to Rackspace.[60]  Cloudera's principal place of business is in Palo Alto, California.[61]  Cloudera sold support for its distribution of HDFS directly to Rackspace,[62] which is in San Antonio.[63]  Further, the three patents-in-suit, which Parallel Iron apparently bought, state on their faces that they were originally owned by either a Texas or Virginia company and name as their inventors persons in Virginia, North Carolina, and Colorado—not Delaware.[64]

---

[58] *J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, No. 6:08-CV-211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009).

[59] *Knapper v. Safety Kleen Sys., Inc.*, No. 9:08-CV-84-TH, 2009 WL 909479, at *5 (E.D. Tex. Apr. 3, 2009) ("The movant must identify sources of proof with enough specificity for the Court to determine whether transfer will increase convenience.").

[60] Orig. Compl., *Parallel Iron, LLC v. Cloudera, Inc.*

[61] *Id.* at ¶ 3.

[62] Piatt Decl. ¶ 12.

[63] Orig. Compl., *Parallel Iron, LLC v. Cloudera, Inc.*, ¶ 10; Piatt Decl. ¶ 5.

[64] Orig. Compl., *Parallel Iron, LLC v. Cloudera, Inc.*, Exs. A-C.

The only possible connection that Delaware has to this case, besides Rackspace's place of incorporation, is that Rackspace has sold products to Delaware customers. But this fact is entitled to no weight because Rackspace sells products to customers in virtually every jurisdiction in the United States.[65]

### b. Only San Antonio will have subpoena power over the non-party witnesses

The second private-interest factor—the availability of compulsory process—likewise weighs heavily against transfer. Parallel Iron ignores this factor as well.

"Often cited as the most important factor in [deciding] a motion to transfer under Section 1404(a) of Title 28 of the United States Code, and the one most frequently mentioned by the courts, . . . is the convenience of the witnesses, most particularly witnesses who are important to the resolution of the case."[66] The Federal Circuit agrees, repeatedly holding that when most of the witnesses and evidence are closer to one venue—with few or no convenience factors favoring a contested venue—the case belongs in the district with a closer nexus to the witnesses and evidence.[67]

Federal Rule of Civil Procedure 45(c)(3) permits the Court to compel non-party witnesses to testify only if they do not have to travel more than 100 miles to testify.[68] This factor thus analyzes which court has the greater ability to compel unwilling, non-party witnesses to testify at trial.

---

[65] Piatt Decl. ¶ 6; *See, e.g., In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) ("Here, the vehicles containing TS Tech's allegedly infringing headrest assemblies were sold throughout the United States, and thus the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue.").

[66] 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3851 (3d ed. 2008).

[67] *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

[68] Fed. R. Civ. P. 45(c)(3); *see also Konami Digital Entm't Co., Ltd. v. Harmonix Music Sys., Inc.*, No. 6:08cv286, 2009 WL 781134, at *6 (E.D. Tex. Mar. 23, 2009).

To satisfy its burden under this factor, Parallel Iron "must make more than a general allegation that certain key witnesses are necessary; the movant must specifically identify key witnesses and outline the substance of their testimony."[69]  Thus, for Parallel Iron to prevail, it must identify which witnesses are key to its case, outline the substance of each of these key witnesses' testimony, and explain how Parallel Iron would be inconvenienced if the key witnesses were unwilling to attend trial and could not be compelled to testify.  Parallel Iron has not satisfied this burden—it has ignored this burden.

Although it is difficult to identify non-party witnesses given the early stage of the litigation, relevant non-party witnesses are far more likely to be located in the Western District of Texas than in Delaware due to Rackspace's headquarters and principal place of business in San Antonio.[70]  It seems likely that the bulk of the non-party witnesses will be former employees of Rackspace.[71]  Employees are, and ex-employees most likely will be, located in the Western District of Texas.[72]  No witnesses from Delaware have been identified, and it is unlikely that any such witness exists.[73]  Rackspace employees will be available in whichever forum a trial is held. But Rackspace's [e]x-employees (and, with the passage of time from now until trial, it is possible, if not probable, that some employees will become ex-employees) would not be subject to Delaware's subpoena power, but would likely not move out of San Antonio and therefore would continue to be subject to the subpoena power in the Western District of Texas.  Thus, this factor overwhelmingly favors the Western District of Texas.

---

[69] *Tel. Audio Prods., Inc. v. Smith*, No. CIV.A.3:97-CV-0863-P, 1998 WL 159932, at *5 (N.D. Tex. Mar. 26, 1998).

[70] Piatt Decl. ¶¶ 8, 9, 10, 5.

[71] *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the [accused infringer's] documents are kept weighs in favor of . . . that location.").

[72] Piatt Decl. ¶¶ 8, 9, 10, 5.

[73] Orig. Compl., *Parallel Iron, LLC v. Cloudera, Inc.*; Piatt Decl. ¶¶ 5, 9, 10.

### c.   San Antonio is a more convenient venue for willing witnesses who would have to travel

The third private factor—the cost of attendance for willing witnesses—also weighs heavily against transfer.  Parallel Iron ignores this factor as well.

The focal point of this factor is the convenience to willing, non-party witnesses.[74]  As mentioned above, San Antonio is far more convenient for any non-party witnesses in this case. Since the non-party witnesses will likely be former employees of Rackspace, assuming they do not move from San Antonio, travel costs would be minimal.  Other non-party witnesses could possibly be representatives from Cloudera—the company that sold HDFS to Rackspace.  Since Cloudera is based in Palo Alto, California,[75] its travel costs would essentially be the same if this case was heard in San Antonio or in Delaware.

### d.   Practical problems in Delaware make trial in San Antonio more easy, expeditious, and inexpensive

The fourth private factor—practical problems that make trial of a case easy, expeditious, and inexpensive—also weighs heavily against transfer.

Parallel Iron argues that the "interests of judicial efficiency and economy . . . mandate that this case be transferred to Delaware, as the Delaware Court is already familiar with the patents-in-suit and the issues related to Parallel Iron's infringement claims."  The Delaware Court is already familiar with Parallel Iron simply because it sues there all the time—"Parallel Iron is currently litigating multiple other cases concerning the same patents in Delaware."[76]  But Parallel Iron's argument is irrelevant.  Never in Fifth Circuit jurisprudence has a court looked at a party's *litigation frequency* to allow that party to determine venue.  Venue is determined on a

---

[74] *Volkswagen*, 545 F.3d at 317.

[75] Orig. Compl., *Parallel Iron, LLC v. Cloudera, Inc.*, ¶ 3.

[76] D.I. 18 at 9.

case-by-case basis.  It makes no difference that the other "Delaware litigations" involve issues on the same patents-in-suit.

In contrast, trial in San Antonio would more easy, expeditious, and inexpensive for Rackspace, Parallel Iron, and IPNav.  This case—as opposed to the Delaware Action—tells the whole story and involves the correct parties.  Although the Delaware Action was technically filed first, Parallel Iron blindsided Rackspace by suing in violation of the Forbearance Agreement.  Rackspace has brought this breach-of-contract claim against Parallel Iron and its agent, IP Nav, in this action.[77]  Instead of Rackspace bringing this state-law breach-of-contract claim in Delaware, those issues can be swiftly adjudicated in San Antonio.  This Court is also duly able to hear the patent-related issues involved in this case.

There is no doubt that litigating in the Western District of Texas would be less expensive. Parallel Iron's members are "scattered across the United States,"[78] so its travel expenses would be roughly the same regardless of the forum.  Rackspace, however, is located in the heart of the Western District of Texas.[79]  It is also likely that sensitive source code and documents will need to be reviewed in San Antonio.  All of these reasons weigh heavily against transfer.

      **e.**    **The District of Delaware is almost twice as congested than the Western District of Texas**

The first public-interest factor—court congestion—weighs heavily against transfer. Parallel Iron ignores this factor.  Rackspace, on the other hand, fully appreciates court congestion, which is why it will file a motion to stay this action should Cloudera's motion to stay the customer-defendants be granted.  If that motion is denied, Rackspace will seek to transfer to this Court, which would be able to handle this case more efficiently than Delaware.

---

[77] D.I. 14.

[78] Ex. "J."

[79] Piatt Decl. ¶ 5.

As noted above, in analyzing the factor of administrative difficulties flowing from court congestion, courts routinely rely on statistics from the Administrative Office of the United States Courts that identify the median time from filing to trial between the two districts.[80]   In 2012, these statistics show that the average length of time from filing to trial in the Western District of Texas in civil cases was 15.2 months.[81]   In contract, the average length of time from filing to trial in the District of Delaware was nearly twice as long—29.3 months.[82]

### f.        San Antonio has a strong local interest in deciding this case

The second public factor—local interest in having localized interests decided at home—weighs heavily against transfer.

San Antonio has a strong local interest in this case because Rackspace has significant and extensive ties to the city.  Rackspace has been headquartered in San Antonio since its birth.[83]  Moreover, Rackspace employs more than 3,100 people in San Antonio.[84]  These connections create a strong local interest that favors transfer.

Rackspace recognizes that Delaware has a general interest in deciding lawsuits brought by and against "Delaware corporations."  But this interest is outweighed for two reasons.  First, Parallel Iron's only connection to Delaware is its decision to incorporate there before filing a long string of patent infringement suits; it is the equivalent of a non-Delaware entity for purposes of the transfer analysis.  Likewise, Rackspace's decision to incorporate in Delaware is not a

---

[80] *See AT&T Intellectual Prop. I, L.P. v. Airbiquity, Inc.*, No. 3:08-CV-1637, 2009 WL 774350, at *6 (N.D. Tex. Mar. 24, 2009).

[81] Ex. "P."

[82] Ex. "Q."

[83] Piatt Decl. ¶ 5.

[84] Piatt Decl. ¶ 9.

factor in the transfer analysis.  Second, the alleged infringer—Rackspace—is a major San Antonio employer and the alleged infringement took place at its San Antonio headquarters.

Although Parallel Iron purports to be a "Delaware limited liability company," it does so solely to sue in the District of Delaware.  The Federal Circuit has specifically held that where an office "staffed no employees, [was] recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue," the location of that party's business is entitled to no weight.[85]  Here, Parallel Iron's connection is even more ephemeral as it does not even claim to have an office in Delaware and only established itself as a Delaware entity one week before filing its first patent-infringement suit.[86]

Accordingly, this factor weighs heavily against transfer.

### g. Texas familiarity with Texas state law

The third public factor—familiarity of the forum with the law that will govern the case—also weighs against transfer.  Parallel Iron has ignored this factor.

Parallel Iron sued Rackspace in Delaware in breach of the Forbearance Agreement.  The parties were both located in Texas when the contract was entered into and the contract was breached in Texas (where Parallel Iron failed to give Rackspace the required notice of the impending lawsuit).[87]  Therefore, Texas state law will govern this breach-of-contract claim.  Both courts are duly able to handle the patent issues.

Rackspace concedes that the last remaining factor—avoidance of unnecessary problems regarding conflict of laws—does not apply in this case.

---

[85] *In re Microsoft Corp.*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011) (citing *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010)).

[86] Orig. Compl., *Parallel Iron, LLC v. Cloudera, Inc.*; Exs. "G, H, J."

[87] Exhibit "R;" Piatt Decl. ¶ 5; Ex. "O."

### h.    Balancing the factors

The *Volkswagen* factors weigh heavily against transferring this case to the District of Delaware.  All four private-interest factors weigh heavily against transfer.  Two public-interest factors weigh heavily against transfer.  One public-interest factor weighs slightly against transfer. The only arguments Parallel Iron puts forth in its one-paragraph-motion-to-transfer are 1) Parallel Iron and Rackspace are both "Delaware entities" and 2) Parallel Iron sues in Delaware all the time.  The first argument is not dispositive and the second is irrelevant.

## IV.    CONCLUSION

Compelling circumstances justify this Court departing from the first-to-file rule.  Simply put, Parallel Iron cheated.  It promised not to sue Rackspace without providing notice, and then it did just that.  Parallel Iron now argues that the Delaware Action should proceed instead of this case because it sued first, but it was able to sue first only because it broke its word.  Sticking to the first-to-file rule would reward Parallel Iron for cheating and punish Rackspace for following the rules the parties agreed to.  Rackspace therefore respectfully asks the Court to deny Parallel Iron's motion to dismiss or stay.

This Court should also deny Parallel Iron's motion to transfer this case to Delaware, because San Antonio is the more convenient forum.  This Court should also deny Parallel Iron's motion to sever and transfer the patent claims because Rackspace has joined Cloudera's motion to stay the customer-defendants in Delaware.  If that motion is granted, Rackspace will file a motion to stay this case and the Parallel Iron-Cloudera litigation will likely resolve the patent issues.  If that motion is not granted, Rackspace will seek to sever and transfer Parallel Iron's claims against it to this Court.  Either way, it is not necessary for this Court to sever and transfer Rackspace's declaratory judgment for noninfringement at this time.

Dated: June 17, 2013                          Respectfully submitted,


                                    _____/s/ *Lamont A. Jefferson*_____
                                    Lamont A. Jefferson
                                    Texas State Bar No. 10607800
                                    lamont.jefferson@haynesboone.com
                                    Haynes and Boone, LLP
                                    112 East Pecan Street, Suite 1200
                                    San Antonio, TX 78205
                                    Telephone:     (210) 978-7000
                                    Telecopier:    (210) 978-7450

                                    John R. Emerson
                                    Texas State Bar No. 24002053
                                    russ.emerson@haynesboone.com
                                    William "Travis" Patterson
                                    Texas State Bar No. 24080095
                                    travis.patterson@haynesboone.com
                                    Haynes and Boone, LLP
                                    2323 Victory Avenue, Suite 700
                                    Dallas, Texas 75219
                                    Telephone:     (214) 651-5000
                                    Telecopier:    (214) 200-0358

                                    ATTORNEYS FOR PLAINTIFF RACKSPACE
                                    US, INC.

**CERTIFICATE OF SERVICE**

It is hereby certified that on June 17, 2013, the foregoing was electronically filed with the

Clerk of Court using the CM/ECF system and all counsel of record were served accordingly.


/s/ *Lamont A. Jefferson*
Lamont A. Jefferson