IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

RACKSPACE US, INC.,

    Plaintiff,

    v.

PARALLEL IRON, LLC and
IP NAVIGATION GROUP, LLC,

    Defendants.

Civil Action No. 5:13-cv-00274-OLG

**REPLY IN SUPPORT OF DEFENDANT IP NAVIGATION GROUP, LLC'S
<u>MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

Donald Puckett
Texas Bar No. 24013358
Amy E. LaValle
Texas State Bar No. 24040529
SKIERMONT PUCKETT LLP
2200 Ross Ave, Suite 4800W
Dallas, TX 75201
Tel: (214) 978-6600
Fax: (214) 978-6601
donald.puckett@skiermontpuckett.com
amy.lavalle@skiermontpuckett.com

Carlos I. Uresti
Texas Bar No. 00785132
THE URESTI LAW FIRM, P.C.
924 McCullough Ave.
San Antonio, TX 78215
Tel: (210) 927 3412
Fax: (210) 921 0430
carlos@urestilaw.com

*Counsel for Defendant
IP Navigation Group, LLC*

# TABLE OF CONTENTS

Introduction and Summary of Argument ........................................................................................ 1

Argument ........................................................................................................................................ 3

    I.       Rackspace does not allege that IPNav itself breached the agreement. ................... 3

    II.      Rackspace has not alleged a plausible theory of vicarious liability ........................ 4

           A.      Rackspace admits it knew the identity of IPNav's principal prior to any alleged breach.  This is sufficient to relieve IPNav of any liability for Parallel Iron's conduct. ............................................................. 4

           B.      Rackspace's conclusory allegations are insufficient to sustain a "mutual agency" theory of vicarious liability. ........................................... 9

Conclusion .................................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Boyles v. McClure,*
  243 S.W. 1080 (Tex. Civ. App. 1922) ............................................................................ 8

*Brackenridge v. Claridge*,
  91 Tex. 527, 44 S.W. 819 (1898) ............................................................................... 5, 6

*Lacquement v. Handy,*
  876 S.W.2d 932 (Tex. App.—Ft. Worth 1994) ......................................................... 8, 9

*Port Ship Servs., Inc. v. Int'l Ship Mgmt. & Agencies Serv., Inc.*,
  800 F.2d 1418 (5th Cir. 1986) .................................................................................. 6, 7

*Port Ship Servs., Inc. v. Norton, Lilly & Co.,*
  883 F.2d 23 (5th Cir. 1989) ...................................................................................... 6, 7

*Posey v. Broughton Farm Co.,*
  997 S.W.2d 829 (Tex. App.—Eastland 1999, pet. denied) .......................................... 8

**Introduction and Summary of Argument**

Rackspace's Amended Complaint against IP Navigation Group ("IPNav") (Dkt. 14) should be dismissed with prejudice because the Amended Complaint does not adequately allege the elements of a breach of contract claim against IPNav.

*First*, it is undisputed that IPNav *itself* has done nothing to breach the Forbearance Agreement. Even taking Rackspace's allegations as true, at most IPNav promised that *it* would not sue Rackspace without providing the requisite notice. It is undisputed that IPNav has not sued Rackspace—not in Delaware or any other forum, ever. Rackspace does not allege otherwise. Thus, Rackspace's breach of contract claim against IPNav must live or die based on whether Rackspace has alleged a viable theory for holding IPNav responsible for *Parallel Iron's* actions in filing a patent infringement lawsuit in Delaware.

*Second,* Rackspace's Response Brief goes to great lengths to argue that IPNav was a party to the Forbearance Agreement—an allegation that IPNav and the Court must assume as true for purposes of this Motion to Dismiss. But even if IPNav was a party to the agreement, IPNav is not *ipso facto* liable for the conduct of Parallel Iron, the other party to the contract. Rackspace's argument is contrary to very basic contract law principles. Rackspace cites no legal authority for its position, and does not address the contrary authority cited in IPNav's Motion.

*Third*, Rackspace fails to articulate a legally cognizable theory of vicarious liability under which IPNav can plausibly be held responsible for the alleged breach by Parallel Iron. Rackspace's "unidentified principal" allegations are insufficient because Rackspace (in paragraphs 28-29 of its Amended Complaint) affirmatively admits that it knew the identity of the principal, Parallel Iron, prior to any alleged breach. In so doing, Rackspace has pled itself out of court. Rackspace attempts to sidestep its admission by arguing that the Court must look only at

1

whether the identity of the principal was disclosed at the time the contract was formed.  But IPNav cites binding authority to the contrary—cases from the Texas Supreme Court and the U.S. Court of Appeals for the Fifth Circuit holding that disclosure of the identity of the principal ***after formation of the contract but before the alleged breach*** is sufficient to relieve the agent from liability.  Rackspace, on the other hand, relies upon nothing more than *dicta* quotations from non-binding Texas intermediate appellate decisions.

*Fourth*, Rackspace's "mutual agency" theory—that Parallel Iron and IPNav were each acting as agents of the other—must be dismissed because Rackspace's allegations are nothing more than bare legal conclusions that are alleged "on information and belief."  Moreover, these allegations affirmatively contradict the exhibits attached to Rackspace's complaint.  In its Response Brief, Rackspace even affirmatively disclaims the factual scenarios that legally can give rise to "mutual agency" such as a joint venture, partnership, alter ego or veil piercing.[1]  Rackspace does not address the portion of IPNav's Motion that sets forth the legal authority for disregarding Rackspace's conclusory allegations that are devoid of facts from which liability could plausibly arise.[2]

*Finally*, Rackspace should not be allowed to further amend its complaint, and its case against IPNav should be dismissed with prejudice.  Rackspace has already amended once, after seeing IPNav's original motion to dismiss.  Moreover, Rackspace affirmatively pled itself out of court by alleging that it knew Parallel Iron was IPNav's principal prior to any alleged breach.[3]

---

[1] *See* Rackspace's Response to Motion to Dismiss (herein "Response Brief"), Dkt. 22 at 12.

[2] *See* IPNav's Motion to Dismiss Plaintiff's Amended Complaint (herein "Motion to Dismiss"), Dkt. 17 at 13-14.

[3] Because of space limitations, IPNav does not address herein the portions of Rackspace's Response Brief that address the adequacy of Rackspace's damages allegations.  IPNav stands on the arguments it made in Section IV(B) of its Motion to Dismiss.

**Argument**

I. **RACKSPACE DOES NOT ALLEGE THAT IPNAV ITSELF BREACHED THE AGREEMENT.**

Rackspace's breach of contract claim is premised upon an alleged breach of the following language from the Forbearance Agreement:

> **Each party** agrees that **it** will not bring litigation against the other Party from the date of execution of this Agreement until 30 days after either Party provides written notice to the other Party that discussions between the parties have ended.[4]

In its Amended Complaint, Rackspace alleged that *Parallel Iron* breached this promise when it sued Rackspace in Delaware, allegedly without first providing notice that the discussions had ended.  But Rackspace does not allege that IPNav itself took any action that amounted to a breach of contract.  It is undisputed that IPNav has not sued Rackspace at all, in any forum, ever.  Moreover, Rackspace does not allege or contend in its Response Brief that Parallel Iron and IPNav made a "joint promise" to keep Parallel Iron from suing Rackspace.  The plain language of the agreement belies a finding of a joint promise because it says "**Each** party agrees that **it** will not bring litigation against the other Party . . . ." (emphasis added).

Instead, Rackspace merely alleged that "IPNav. . . .is liable on the Forbearance Agreement because it is a party to the contract."[5]  Rackspace's Response Brief makes clear that its argument on this point is premised on the erroneous assumption that if IPNav is a party to the agreement, then it necessarily must be liable for Parallel Iron's actions.  As just one example, Rackspace states: "As a party to the Forbearance Agreement, when Parallel Iron breached by filing the Delaware Action, IPNav breached as well."[6]  This argument is a classic *non sequitur*— Rackspace's conclusion simply does not follow from its premise.

---

[4] Ex. B to Amended Complaint, Dkt. 14-2 (emphasis added).

[5] Amended Complaint, Dkt. 14 at ¶ 52.

[6] Response Brief, Dkt. 22 at 12.

3

In its Motion to Dismiss, IPNav cited ample authority for the basic contractual rule that a party to a contract is not liable for a breach of the contract unless the party *itself* committed the breach or *jointly promised performance* of the same contractual obligation.[7]  This is very basic contract law.  Yet Rackspace completely ignores the case authorities cited by IPNav.  Unsurprisingly, Rackspace cites *no authority* for its proposition that one party to a contract is automatically liable for a breach of contract committed by a co-party.

Because Rackspace does not allege that IPNav itself performed any action that amounted to a breach of contract, Rackspace's breach of contract allegations against IPNav can survive only if Rackspace has adequately alleged a theory by which IPNav can be held responsible for the alleged conduct of co-defendant Parallel Iron.  As discussed below, Rackspace's vicarious liability allegations are also insufficient.

## II.   RACKSPACE HAS NOT ALLEGED A PLAUSIBLE THEORY OF VICARIOUS LIABILITY.

### A. Rackspace admits it knew the identity of IPNav's principal prior to any alleged breach.  This is sufficient to relieve IPNav of any liability for Parallel Iron's conduct.

In paragraph 28-29 of its Amended Complaint, Rackspace affirmatively alleges that, soon after the Forbearance Agreement was signed, IPNav disclosed the relevant patents to Rackspace.  Rackspace further alleges that because these patents were assigned to Parallel Iron, Rackspace knew Parallel Iron was the "unidentified principal" on whose behalf IPNav was acting as an agent.[8]  In its Response Brief, Rackspace argues that this disclosure of the principal, made just after the formation of the contract, is irrelevant because the Court must look at the time of

---

[7] *See* Motion to Dismiss, Dkt. 17 at 8 for discussion and citations.

[8] *See* Amended Complaint, Dkt. 14 at ¶¶ 28-29.

4

contract formation to determine if the principal was disclosed.[9]  But this is not an accurate statement of agency law as it relates to unidentified principals.  To the contrary, so long as the principal is identified prior to any alleged *breach* of the contract, the agent is relieved of liability.

> **1. The binding authority cited by IPNav demonstrates that disclosure of the principal's identity after the formation of a contract, but before the alleged breach, is sufficient to relieve the agent from liability for the principal's actions.**

The Texas Supreme Court has squarely held that when a principal is unidentified at the time a contract was formed, but is identified prior to the alleged breach, the agent is relieved of liability for the principal's breach.  *See Brackenridge v. Claridge*, 91 Tex. 527, 533, 44 S.W. 819, 821 (1898) ("[W]e do not think that an agent of an undisclosed principal can be held responsible for the subsequent dealings with the principal after the agency is disclosed.").

A close look at the facts of *Brackenridge* shows that it is in all relevant respects analogous to this case.  In that case, the agent (Brackenridge) was the president of a bank, and he made a contract on behalf of an unidentified principal—the bank.  The contract was a real estate brokerage agreement in which Brackenridge promised to pay Claridge a commission if Claridge could locate a buyer for certain real property.  At the time the brokerage contract was formed, Brackenridge did not disclose the identity of his principal (the bank).  *See Brackenridge*, 91 Tex. at 533 ("Claridge testified that when Brackenridge employed him the latter told him he was the owner of the land.  Therefore, if that were true and if Brackenridge was acting for the bank he could *either* hold him or his undisclosed principal upon the contract.") (emphasis added).

Claridge located and presented a suitable buyer to Brackenridge, but the transaction did not close due to a defect in title to the property.  After formation of the contract, but ***prior to the alleged breach***, Claridge had learned that Brackenridge himself was merely acting as an agent

---

[9] *See* Response Brief, Dkt. 22 at 11.

for the bank.  *See id.* at 532 ("It is evident during the negotiation for the option it was disclosed that Brackenridge was not acting for himself, but as the agent and trustee of the bank of which he was president.").

On these facts, the Texas Supreme Court considered whether Brackenridge could be held liable for the alleged breach by the bank, given that *after the formation of the contract* the true principal had been sufficiently identified.  The Court held that the disclosure of the agent's identity had relieved Brackenridge of liability for the actions of the principal:

> When, however, *before any liability accrued*, the agency was disclosed, the parties entered into a contract with the bank as the owner of the land Brackenridge could not, in our opinion, be held liable for any default of the bank upon that contract. . . .  If Brackenridge's agency was not disclosed in the first instance as claimed by Claridge, and if the title was imperfect, and for that reason alone [the purchasers] declined to purchase under their option, it may be that *the bank* was liable for the commissions.  *But we do not think that an agent of an undisclosed principal can be held responsible for the subsequent dealings with the principal after the agency is disclosed.*

*Id.* at 533 (emphasis added).

More recently, the Fifth Circuit has decided at least two cases applying this same rule—that subsequent disclosure of an unidentified principal relieves the agent from liability for any alleged breach by the principal.  *See Port Ship Servs., Inc. v. Norton, Lilly & Co.,* 883 F.2d 23 (5th Cir. 1989) (herein "*Port Ship II*"); and *Port Ship Servs., Inc. v. Int'l Ship Mgmt. & Agencies Serv., Inc.*, 800 F.2d 1418 (5th Cir. 1986) (herein "*Port Ship I*").  Both of these cases present the same plaintiff and a similar fact pattern—a water taxi service (Port Ship Service) that contracted to provide services to an unidentified principal and, subsequent to formation of the agreement, the true principal's identity was disclosed.  The Fifth Circuit in *Port Ship II* summarized both cases and the relevant rule:

> The [*Port Ship I*] case involved the same plaintiff, the same issues, and a similarly-situated defendant.  In that case, we held that an agent such as Norton, Lilly is not liable for services rendered to its principal if the third party providing

6

>   the services, such as Port Ship, ***had sufficient information to give notice of the identity of the principal***. Further, that information could come from any source.

*Port Ship II*, 883 F.2d at 24 (emphasis added). In *Port Ship II*, the Fifth Circuit affirmed the district court's determination that a post-contractual disclosure of the principal's identity was sufficient to relieve the agent from liability. *See id.* In *Port Ship I*, the Fifth Circuit remanded the case to the district court for further fact finding on whether the post-contractual disclosures were sufficient to adequately disclose the identity of the principal. *Port Ship I*, 800 F.2d at 1422.

Rackspace relies heavily upon the Restatement (Third) of Agency,[10] but *Port Ship I* cites the comments to the Restatement to support its contention that disclosure of the principal after the formation of the contract is sufficient to relieve the agent from liability.[11]

Thus, after reviewing the case authorities that are binding on this Court, it is clear that Rackspace's admission in paragraphs 28-29 of its Amended Complaint is critical. When Rackspace alleged that the relevant patents, and therefore the owners of those patents, had been disclosed prior to the alleged breach of contract, it admitted that IPNav had been relieved of liability for the conduct of its then-disclosed principal, Parallel Iron.[12]

> **2. Rackspace's authority does not survive critical analysis. Rackspace relies solely on *dicta* quotations from cases that are not binding authority, and that do not present analogous facts.**

Rackspace devotes just a single paragraph of its Response Brief to the critical issue of whether a post-contract disclosure relieves the agent of liability. At the top of page 11, Rackspace asserts in a single sentence: "[I]t is irrelevant that Rackspace learned of Parallel Iron's

---

[10] *See* Response Brief at 8-9.

[11] *See Port Ship II*, 800 F.2d at 1421 (citing Restatement (Second) of Agency §4, Comment (d)).

[12] Rackspace asserts that IPNav did not expressly disclose the identity of its principal by name. *See* Response Brief at 3. But the *Port Ship I* and *Port Ship II* cases make clear that express disclosure is not required. The relevant test is whether Rackspace knew the identity of the principal, and "that information could come from any source." *Port Ship II*, 883 F.2d at 24. Rackspace's own allegations in paragraphs 28-29 make clear that it did in fact know the identity of IPNav's principal.

identity after the contract was already entered into" and provides three short quotations as the only support.[13]

As an initial matter, all three of the cited cases are from Texas intermediate courts of appeal. Thus, the cases are not binding on this Court in light of directly contrary authority from the U.S. Court of Appeals for the Fifth Circuit and the Texas Supreme Court.

Moreover, a close examination of the cases cited by Rackspace reveals that the quotations are mere *dicta* and did not supply the rule of decision on the facts presented in those cases. In *Posey*,[14] for example, the court did state that "[t]he disclosure must be made at the time the parties enter the contract," as Rackspace quotes. But in the very next paragraph, the Court looks to see whether the principal had been disclosed ***at the time of the breach***, stating: "It was undisputed that Broughton did not learn of Underwood's identity as Posey's principal ***until after Norwest failed to honor the drafts***."[15] Thus, even the *Posey* court thought it important to look at whether there had been a post-contractual disclosure of the principal's identity.

Similarly in *Boyles*, in the paragraph immediately following the quotation provided by Rackspace, the Court goes on to cite *Brackenridge,* and acknowledges that disclosure of the principal's identity after the making of a contract can relieve the agent of liability[16]—exactly the opposite conclusion that Rackspace draws from the case. The *Boyles* Court explicitly finds: "We do not think the evidence is sufficient to sustain such contention" that the principal's identity was ever disclosed.[17] In *Lacquement*, the court remanded for a trial on the merits, finding a genuine

---

[13] Response Brief, Dkt. 22 at 11.

[14] *Posey v. Broughton Farm Co.,* 997 S.W.2d 829 (Tex. App.—Eastland 1999, pet. denied).

[15] *Id.* at 832.

[16] *Boyles v. McClure,* 243 S.W. 1080, 1082 (Tex. Civ. App. 1922).

[17] *Id.*

issue of fact regarding the sufficiency of the disclosure of the principal's identity.[18]

Thus, a close examination of Rackspace's cited cases reveals that Rackspace is relying upon nothing more than hollow quotations to support its view that a principal must be disclosed at the time of contract formation in order to relieve the agent from liability.

### B. Rackspace's conclusory allegations are insufficient to sustain a "mutual agency" theory of vicarious liability.

IPNav devoted an entire section of its Motion to Dismiss to debunking Rackspace's bare-bones and conclusory allegation, "on information and belief," that Parallel Iron was acting as IPNav's agent when it filed the Delaware lawsuit.[19] As explained in the Motion to Dismiss, this bare conclusion is devoid of any factual allegations supporting the conclusion, and in fact is contradicted by Rackspace's other factual allegations. Rackspace's Response Brief makes no attempt to address these arguments or the relevant authorities cited by IPNav in its Motion. Indeed, in its Response Brief Rackspace *affirmatively disclaims* the factual scenarios that might plausibly give rise to a finding of mutual agency when it states: "[T]here is not a joint venture, partnership, alter ego, [or] veil piercing involved here . . . ."[20] Rackspace simply argues "there is no reason the Court cannot hold that . . . Parallel Iron was acting as IPNav's agent when it sued Rackspace . . . ."[21] But Rackspace has the burden backward. It is Rackspace's obligation to allege facts that provide a plausible basis for finding that Parallel Iron acted as IPNav's agent when it filed the Delaware lawsuit. Rackspace's assertion of a bare legal conclusion, "on information and belief," is not sufficient to meet its pleading burden.

Perhaps recognizing that its actual allegations are insufficient, Rackspace's Response

---

[18] *Lacquement v. Handy,* 876 S.W.2d 932, 940 (Tex. App.—Ft. Worth 1994).

[19] *See* Motion to Dismiss, Dkt. 17 at 12-14.

[20] Response Brief, Dkt. No. 22 at 12.

[21] *Id.*

9

Brief repeatedly points to evidence outside the pleadings or urges the Court to make assumptions that are not contained in Rackspace's actual allegations.[22] The Court should not be distracted by Rackspace's sleight of hand. Rackspace's only allegations in support of its "mutual agent" theory are contained in paragraph 53 of its Amended Complaint. As explained in the Motion to Dismiss, the allegations *as pleaded* are legally insufficient.[23] Rackspace does not address the arguments IPNav made in its Motion.

## Conclusion

For the foregoing reasons, and the reasons stated in IPNav's Motion to Dismiss, Rackspace's complaint against IPNav should be dismissed. Moreover, the dismissal should be with prejudice to re-filing, and Rackspace should not be given an opportunity to further amend. As argued in IPNav's Motion to Dismiss,[24] Rackspace has already amended once after seeing IPNav's first Motion to Dismiss, and should not now be given another chance. Moreover, with respect to its "unidentified principal" theory, Rackspace has pled itself out of Court and is not entitled to take back its admission. Any further amendment by Rackspace would be futile.

---

[22] For example, Rackspace attaches an IPNav web page and argues "IPNav controls the entire process" when one of its clients files an infringement lawsuit. *See* Response Brief, Dkt. 22 at 2. Without support, Rackspace says that Parallel Iron filed suit against Rackspace "presumably at IPNav's direction and control . . ." (*id.* at 3) and later asserts, with no support and no corresponding allegation in its complaint, that "IPNav is liable because it directed the litigation in Delaware." *Id.* at 12. Contrary to the actual allegations in its Amended Complaint, which make clear that Parallel Iron filed the Delaware action of its own accord, Rackspace states in its Response Brief that "IPNav breached that agreement by filing the Delaware litigation in the name of Parallel Iron." *Id.* at 5. In the silliest diversion of all, Rackspace leads off its brief by pointing out that IPNav and Parallel Iron share the same **local counsel** in this case (IPNav is also represented by separate counsel), and emphasizing that the signature block on Parallel Iron's answer contains a typo that states "Counsel for [IPNav]." *Id.* at 1. Few things could be less relevant to the sufficiency of Rackspace's allegations.

[23] Motion to Dismiss, Dkt. 17 at 12-14.

[24] *Id.* at 18.

Date: July 2, 2013                                    Respectfully Submitted:


   */s/ Donald Puckett*
Donald Puckett
Texas Bar No. 24013358
Amy E. LaValle
Texas State Bar No. 24040529
SKIERMONT PUCKETT LLP
2200 Ross Ave, Suite 4800W
Dallas, TX 75201
Tel: (214) 978-6600
Fax: (214) 978-6601
donald.puckett@skiermontpuckett.com
amy.lavalle@skiermontpuckett.com

Carlos I. Uresti
Texas Bar No. 00785132
THE URESTI LAW FIRM, P.C.
924 McCullough Ave.
San Antonio, TX 78215
Tel: (210) 927 3412
Fax: (210) 921 0430
carlos@urestilaw.com

*Counsel for Defendant*
*IP Navigation Group, LLC*

11

## **CERTIFICATE OF SERVICE**

    It is hereby certified that on July 2, 2013, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system.

                                                 */s/ Donald Puckett*
                                                 Donald Puckett